COMMONWEALTH *vs.* WILLIAM W. DREW.

Suffolk.     February 28, 1911. — April 4, 1911.

Present : KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Board of Health,* Municipal.     *Milk.*

The board of health of a city, undertaking to act under the authority given to them by R. L. c. 75, §§ 65, 140, made the following regulation : " No person or corporation shall sell or offer, expose or keep for sale in any shop, store or other place where goods and merchandise are sold, milk or cream, unless the same is sold or offered, exposed or kept for sale in tightly closed or capped bottles or receptacles, which have been approved by the board of health." *Held,* that the statute, which confines the jurisdiction of the board to examining into all nuisances, sources of filth and causes of sickness in the city that in their opinion may be injurious to the public health, to destroying, removing or preventing " the same as the case may require," and to making " regulations for the public health and safety relative thereto and to articles . . . capable of containing or conveying infection or contagion or of creating sickness which are brought into or conveyed through " the city, does not give the board power to make a regulation as to the sale of milk kept and sold in any such way as does not threaten the public health.

A dealer in milk in a city kept in his store for sale wholesome milk of standard quality in a new tin cylinder or vessel with a new, clean removable top, the vessel being contained in a covered cooler, which was kept in a location and under such conditions as were approved by the board of health, contained wholesome, clean ice, and was properly drained and cared for and tightly closed except when milk or ice was being removed from or introduced into it. The milk always remained at a temperature less than fifty degrees Fahrenheit and none of it was allowed to stand outside of the cooler except when a sale was being made. The measure which was used in retailing the milk was new and clean and hung inside the cylinder which contained the milk. The cylinder was simple in shape, was easily cleaned and was susceptible of perfect sterilization. *Held,* that R. L. c. 75, §§ 65, 140, gave to the board of health of the city no jurisdiction or power to take any action or to make any regulation with regard to milk so kept and sold.

COMPLAINT received and sworn to in the Municipal Court of the City of Boston on November 29, 1910, charging the defend-

ant with a violation of a regulation of the board of health relative to the sale of milk, as stated in the opinion.

On appeal to the Superior Court, the case was tried before *Stevens*, J., upon an agreed statement of facts. The defendant asked for rulings that upon the facts in proof there was no evidence upon which the defendant could be found guilty, and that a verdict of not guilty should be ordered; that the regulation upon which the complaint was founded was invalid and void, in that it was unreasonable and not within the lawful exercise of any police power of the board of health of the city of Boston, and in that it was in violation of the limitations and restrictions of the constitution of the Commonwealth and of the United States, and that no conviction could be had for the violation of the regulation with which the defendant was charged.

The rulings were refused. The defendant was found guilty, and the presiding judge reported the case for determination by this court, with the following stipulation: " If any one of the rulings requested by the defendant should have been given, the verdict is to be set aside and a verdict of not guilty is to be directed by the court. If there is no error in my rulings, the verdict is to stand as rendered."

The case was submitted on briefs.

*M. J. Sughrue*, for the defendant.

*M. J. Dwyer*, Assistant District Attorney, for the Commonwealth.

KNOWLTON, C. J. This is a complaint against the defendant for the violation of a regulation of the board of health of the city of Boston, relative to the sale of milk. The material part of the regulation is as follows: " No person or corporation shall sell or offer, expose or keep for sale in any shop, store or other place where goods and merchandise are sold, milk or cream, unless the same is sold or offered, exposed or kept for sale in tightly closed or capped bottles or receptacles, which have been approved by the board of health." It was agreed that milk was kept for sale by the defendant in a vessel contained in a covered cooler, in his store ; that it was always kept at a temperature less than fifty degrees Fahrenheit, and that none of it was allowed to stand outside of the cooler except while a sale of milk was being made ; that the cooler was always kept properly drained and cared for and

tightly closed, except during such interval as was necessary for the introduction or removal of milk or ice, and was kept in such location and under such conditions as were approved by the board of health. The milk was wholesome milk of standard quality, was taken from a clean, new tin cylinder or vessel, set in a clean, new ice chest, surrounded by clean, wholesome ice. The vessel had a removable cover which was new and clean, and the measure which was used by the defendant in retailing the milk was new and clean, and hung inside the tin cylinder so that it was not exposed to the air. The cylinder was simple in shape, is easily cleaned and was susceptible of perfect sterilization. The sales were made in any quantities desired by customers, from one cent's worth upward. The defendant's store was in a district in which many poor people live, and facts were agreed tending to show that such people often want to purchase a quantity less than the quantity contained in the smallest bottles used, and would be put to inconvenience by the enforcement of the regulation.

We do not consider the question whether this regulation is beyond the constitutional power of the Legislature to enact as a statute, or to authorize the board of health to establish locally. For we are of opinion that the statute under which the board assumed to act, (R. L. c. 75, § 65,) is not broad enough to give them this authority. It is as follows: "The board of health shall examine into all nuisances, sources of filth and causes of sickness within its town, or on board of vessels within the harbor of such town, which may in its opinion be injurious to the public health, shall destroy, remove or prevent the same as the case may require and shall make regulations for the public health and safety relative thereto and relative to articles which are capable of containing or conveying infection or contagion or of creating sickness which are brought into or conveyed from its town, or into or from any vessel." By § 140 of this chapter the section is made applicable to cities.

This statute does not give the board power to make regulations as to all matters affecting the public health. If the board should be certain that the smoking of cigarettes by boys affects their health injuriously, it would have no power to make a regulation forbidding the smoking of them by boys under a certain age, or the sale of them to such boys. It has no power to make gen-

eral regulations as to conduct or practices injurious to health, which, if indulged in by many persons, affect the health of the public. The statute above quoted gives the board jurisdiction to deal with "nuisances, sources of filth and causes of sickness within its town." Plainly the milk in question was not a nuisance or a source of filth. In determining the meaning of the words "causes of sickness," the doctrine *noscitur a sociis* is to be applied. It is a little broader term than the two terms that precede it, but it is of the same general character. Primarily it refers to something local, and the board is directed "to destroy, remove or prevent the same." In § 67 we have another indication of the meaning of these words in the requirement that the board shall order the owner or occupant of private premises to remove any "nuisance, source of filth or cause of sickness found thereon." So under § 74 he may obtain a warrant directed to an officer or to a member of the board, commanding him to destroy, remove, or prevent any "nuisance, source of filth or cause of sickness," in reference to which they have made complaint to a magistrate. We are of opinion that, within the meaning of the language in these sections, milk kept in a vessel, as this was kept by the defendant, was not a "nuisance, source of filth or cause of sickness," which gave the board of health jurisdiction to take any action or make any regulation under the R. L. c. 75, § 65.

The latter portion of this section gives the board jurisdiction to make regulations "relative to articles which are capable of containing or conveying infection or contagion or of creating sickness which are brought into or conveyed from its town, or into or from any vessel." This has reference to the bringing into the town or conveying away of articles capable of containing or conveying infection, in such a way as to affect injuriously the public health or safety. The legislation is found in the Rev. Sts. c. 21, § 6, in which the language is, "when such articles shall be brought into or conveyed from their town, or into or from any vessel." In the Gen. Sts. c. 26, § 5, the words, "when such articles shall be" are omitted, and the section reads in this part, "brought into or conveyed from its town, or into or from any vessel." In Pub. Sts. c. 80, § 18, the language is the same. We are of opinion that this part of the section relates to articles of such a kind as to be dangerous in reference to their capability of

containing or conveying infection or contagion, or of creating sickness, in connection with their removal from one town to another. The case of *Train* v. *Boston Disinfecting Co.* 144 Mass. 523, relative to the disinfecting of rags, furnishes an illustration of what is meant by the statute.

The regulation in the present case has no reference to property in connection with its removal from one city or town to another, nor is pure milk such an article as is referred to in the statute. We are of opinion that this part of the section does not authorize a regulation as to the sale of milk kept and sold in the manner that is disclosed in this case.

We have no occasion to consider the objection to the regulation in that part which subjects the business to an absolute determination of the board as to whether they will approve of the bottles or receptacles used in making sales. See *Commonwealth* v. *Maletsky*, 203 Mass. 241.

*Verdict set aside.*