433 Mass. 217 (2001)                                    217

Tri-Nel Management, Inc. *v.* Board of Health of Barnstable.

Tri-Nel Management, Inc.,[1] & others[2] *vs.* Board of Health of Barnstable & another.[3]

Barnstable. November 7, 2000. - January 19, 2001.

Present (Sitting at Brockton): Marshall, C.J., Abrams, Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Tobacco Smoke. Practice, Civil,* Preliminary injunction. *Injunction. Administrative Law,* Regulations. *Regulation. Board of Health. Municipal Corporations,* Board of health, Charter. *Constitutional Law,* Home Rule Amendment, Separation of powers.

Statement of the standard of review of the denial of an application for a preliminary injunction seeking to enjoin enforcement of a regulation adopted by a board of health. [219-220]

A board of health did not exceed its authority under G. L. c. 111, § 31, in adopting a regulation prohibiting smoking in "food service establishments, lounges, and bars," where the regulation was based on evidence before the board and was reasonable [220-221]; and, moreover, where nothing in G. L. c. 111, § 31, limited the board's plenary power to regulate matters of public health [221-222]; further, the regulation did not conflict with the provisions of G. L. c. 270, § 22, inserted by St. 1987, c. 759, § 3 [222-225].

The Legislature's delegation of regulatory authority to local boards of health under G. L. c. 111, § 31, did not violate the separation of powers provision of art. 30 of the Massachusetts Declaration of Rights, where the statute delegated the implementation of legislative policy, provided appropriate guidance for the implementation of regulations, and provided judicial review safeguards against abuses of discretion. [225-226]

A regulation adopted by a board of health that banned smoking in restaurants and bars was not demonstrated to violate the town's charter, where the town council had delegated regulatory authority to the board to preserve and protect the public health. [226-227]

Plaintiff lounge owners did not demonstrate a likelihood of success on the merits on their application for a preliminary injunction to enjoin enforcement of a municipal regulation adopted by a board of health prohibiting smoking in "food service establishments, lounges, and bars," and a Superior Court judge properly denied the application; moreover, the plaintiffs did not demonstrate a risk of irreparable harm or that the issuance of the injunction would serve the public interest. [227-228]

[1]Doing business as The Windjammer Lounge.

[2]Peter K. Feeney, William Moore, and Star Scovill.

[3]Town of Barnstable.

CIVIL ACTION commenced in the Superior Court Department on March 27, 2000.

The case was heard by *Gary A. Nickerson*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward W. Kirk* for the plaintiffs.

*Robert D. Smith*, Town Attorney (*Ruth J. Weil* with him) for the defendants.

The following submitted briefs for amici curiae:

*Thomas F. Reilly*, Attorney General, & *William W. Porter*, Assistant Attorney General, for the Attorney General.

*Cheryl Anne Sbarra & Christopher N. Banthin* for Massachusetts Association of Health Boards & another.

*William J. Lundregan, III*, City Solicitor, for city of Salem.

COWIN, J. We are asked in this appeal to decide whether the board of health of Barnstable (board) has the authority to issue a municipal regulation prohibiting smoking "in all food service establishments, lounges and bars." We hold that it does.

1. *Background.* We summarize the relevant facts from the uncontested documentary materials in the record. In 1995, the board began considering whether to impose regulations curbing the harmful effects of environmental tobacco smoke (ETS). After several public hearings and consideration of the issue between 1995 and 1996, the board adopted a regulation prohibiting smoking in public places, excluding restaurants and bars. Sometime in the latter part of 1997, the board began considering the possibility of regulating ETS in restaurants and bars. To this end, between 1997 and the spring of 1999, the board held several public meetings, reviewed studies on ETS, contacted environmental health authorities on the issue, and consulted with local restaurant businesses. Following these efforts, the board concluded "only two options would adequately protect public health: 1) either a complete ban on smoking in restaurants and bars; or 2) allowing restaurants and bars to construct enclosed smoking areas."

The board drafted a proposed regulation prohibiting smoking in restaurants and bars except in limited, separately enclosed and ventilated seating areas. When the local restaurant industry indicated at a public hearing that it opposed the concept of separate smoking areas, the board redrafted the proposed regulation to impose the current absolute ban on smoking "in all food

service establishments, lounges and bars."[4] Following a public hearing on the proposed ban, the board, pursuant to G. L. c. 111, § 31, adopted the regulation on February 10, 2000. Prior to the regulation's effective date (April 3, 2000), Tri-Nel Management, Inc., doing business as The Windjammer Lounge, and certain named investors, stockholders, employees, and operators of the business (plaintiffs) sought a preliminary injunction in the Superior Court, requesting the court to enjoin enforcement of the regulation.[5] Denying the plaintiffs' request for a preliminary injunction, a Superior Court judge determined that (1) the plaintiffs had failed to demonstrate a reasonable likelihood of success on the merits; (2) the plaintiffs also failed to show irreparable harm; and (3) issuance of the injunction would not serve the public interest. The plaintiffs appealed. We granted the plaintiffs' application for direct appellate review.

2. *Discussion.* To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiff's likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction. *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980). When, as here, a party seeks to enjoin governmental action, the court also considers whether the relief sought will adversely affect the public. *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 89 (1984), and cases cited. *Biotti* v. *Selectmen of Manchester*, 25 Mass. App. Ct. 637, 640 (1988). In reviewing an order on a preliminary injunction, we must determine whether the judge abused his discretion. Because no testimony was taken in the Superior Court hearing there is no credibility or factual issue on which we would defer to the judge. *Packaging Indus. Group, Inc.* v. *Cheney*, *supra* at 615-616.

We note initially that "in the absence of a contrary statutory direction, a court reviewing a regulation is not concerned with

---

[4]The regulation contains several limited exceptions, none of which is relevant here.

[5]The complaint also sought a judicial declaration that the board's regulation exceeds "the authority granted to Boards of Health under" G. L. c. 111, § 31, and "conflict[s] with" G. L. c. 270, § 22. Although the plaintiffs' request asserted constitutional challenges raising issues of vagueness, equal protection, and due process of law, these issues have not been raised on appeal.

whether there was substantial evidence in a record before the agency, but rather . . . whether, based solely on the record *made in court,* the adoption of the agency regulation was illegal, arbitrary, or capricious" (emphasis supplied). *Massachusetts State Pharmaceutical Ass'n* v. *Rate Setting Comm'n,* 387 Mass. 122, 126 (1982). Accordingly, it is the record of the preliminary injunction proceeding with which we are concerned.

The plaintiffs present several arguments supporting their claim of a likelihood of success on the merits. They contend that the board's regulation exceeds the authority granted by G. L. c. 111, § 31. We disagree. General Laws c. 111, § 31, authorizes local boards of health to "make reasonable health regulations." G. L. c. 111, § 31. We have previously recognized that the "statutory language itself is the principle source of insight into the legislative purpose." *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). Through the plain language of G. L. c. 111, § 31, the Legislature has delegated to boards of health the power to adopt reasonable health regulations.

The plaintiffs next argue that the board's regulation is not reasonable because the amount of ETS exposure at restaurants and bars would not be sufficient to cause adverse health effects in general. In deciding whether a health regulation adopted under G. L. c. 111, § 31, is reasonable, this court accords the regulation the same deference granted to a legislative enactment. *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138 (1949). Health regulations have a strong presumption of validity, and, when assessing a regulation's "reasonableness," all rational presumptions are made in favor of the validity of the regulation. *Id.* A court may invalidate the regulation only when there is no rational relation between the regulation and its stated public health purpose. *Id.* at 138-139. *Hamel* v. *Board of Health of Edgartown,* 40 Mass. App. Ct. 420, 423 (1996).[6]

Reviewing the record in this case, we note that the plaintiffs did not offer any evidence in support of their contention that the ill effects of ETS exposure will not result from only limited contact. By contrast, the board has placed in the record four reports interpreting and summarizing scientific studies that identify ETS exposure as a cause of numerous negative health

---

[6]The plaintiffs have invited this court to reconsider the degree of deference accorded to health regulations. We decline to do so; the rationale behind this rule has maintained its vitality and the rule itself remains "consonant with the needs of contemporary society." *Lewis* v. *Lewis,* 370 Mass. 619, 628 (1976).

effects.[7] Further, given the subject matter, the board's expertise and experience in this area is given great deference by our courts. *Massachusetts Inst. of Tech.* v. *Department of Pub. Utils.*, 425 Mass. 856, 867-868 (1997). Given the absence of any evidence from the plaintiffs, the scientific studies on the ill effects of ETS exposure generally, and the board's expertise in this subject matter, we conclude that the board's regulation is within the standard of reasonableness. *Druzik* v. *Board of Health of Haverhill, supra* at 138.

The plaintiffs also maintain that G. L. c. 111, § 31, limits the authority of boards of health to adopt regulations to specific subject matters enumerated in other sections of G. L. c. 111. For this proposition, the plaintiffs cite our decision in *Commonwealth* v. *Drew*, 208 Mass. 493 (1911). The *Drew* opinion, however, was issued in 1911, approximately nine years before

---

[7]These reports were placed in the record by the board in support of its opposition to the plaintiffs' request for a preliminary injunction. In addition to the reports, the board submitted affidavits from (1) the Commissioner of Public Health; (2) the chairwoman of the Barnstable board of health; (3) the director of public health for the town of Barnstable; (4) the executive director of the Hyannis area chamber of commerce; and (5) the town clerk of Barnstable. The board's chairwoman states in her affidavit that "[i]n considering its decision to implement a regulation prohibiting smoking in restaurants and bars, the Board of Health reviewed numerous documents from federal and state health authorities and results of original research documenting the health effects of environmental tobacco smoke (ETS)." Describing the scientific reports submitted to the court, she further states, "[i]n preparation for this affidavit, I have taken from my files and downloaded from the Internet a small sampling of the various documents and types of documents which were reviewed [by the board]."

The reports referenced by the chairwoman include reports generated by the National Cancer Institute, the United States Environmental Protection Agency (EPA), and the Centers for Disease Control and Prevention. The reports summarize medical studies identifying a causal link between ETS and increased risk of the following medical conditions: stunted fetal growth leading to low birth weights, Sudden Infant Death Syndrome, respiratory ailments, eye and nasal irritation, nasal sinus cancer, lung cancer, and coronary heart disease mortality. With specific regard to children, the reports summarize medical studies finding a causal link between ETS and increased risk of middle ear infections and induction or exacerbation of asthma. The plaintiffs did not present any evidence contradicting the chairwoman's affidavit or these reports. Although the plaintiffs focus their arguments on the ETS exposure of restaurant patrons, three of the reports submitted by the board also identify employees as individuals at risk for adverse health effects. A 1994 EPA report notes a scientific study which found that workplace ETS exposure created a "slightly higher risk" of developing cancer than residential exposures.

the enactment of G. L. c. 111, § 31, and interpreted a different statute, Rev. L. c. 75, § 65 (1902), which gave more limited power to boards of health. Compare *Commonwealth* v. *Drew, supra* at 495 (analyzing Rev. L. c. 75, § 65 [1902]), with St. 1920, c. 591, § 17, enacting predecessor to G. L. c. 111, § 31, as amended by St. 1937, c. 285.[8] Section 31 was "passed as legislation of broad and general scope . . . which is 'not subject to the limitations of earlier rule making powers of boards of health.' " *Board of Health of Woburn* v. *Sousa,* 338 Mass. 547, 551-552 (1959), quoting *Brielman* v. *Commissioner of Pub. Health of Pittsfield,* 301 Mass. 407, 409 (1938). We have said that, when the Legislature enacted G. L. c. 111, § 31, it created "a comprehensive, separate, additional source of authority for health regulations." *Board of Health of Woburn* v. *Sousa, supra* at 550. Since the enactment of G. L. c. 111, § 31, we have repeatedly observed that this statute has granted boards of health plenary power to issue reasonable, general health regulations. *Independence Park, Inc.* v. *Board of Health of Barnstable,* 403 Mass. 477, 480 (1988). *United Reis Homes, Inc.* v. *Planning Bd. of Natick,* 359 Mass. 621, 623 (1971). Moreover, we have previously recognized the ill effects of tobacco use, particularly when it involves minors, as a legitimate municipal health concern justifying municipal regulation of tobacco products. *Patton* v. *Marlborough,* 415 Mass. 750, 751-752 (1993) (upholding board of health regulation limiting operation of cigarette vending machines to certain locations where access by minors prohibited). *Take Five Vending, Ltd.* v. *Provincetown,* 415 Mass. 741, 748-749 (1993) (upholding bylaw forbidding sale of cigarettes from vending machines).

The plaintiffs further argue that the board's regulation conflicts with existing legislation dealing with the same subject matter. They contend that existing legislation indicates legisla-

---

[8]The current version of Rev. L. c. 75, § 65 (1902), which is substantially similar to its predecessor, is found at G. L. c. 111, § 122. General Laws c. 111, § 122, provides: "The board of health shall examine into all nuisances, sources of filth and causes of sickness within its town, or on board of vessels within the harbor of such town, which may, in its opinion, be injurious to the public health, shall destroy, remove or prevent the same as the case may require, and shall make regulations for the public health and safety relative thereto and to articles capable of containing or conveying infection or contagion or of creating sickness brought into or conveyed from the town or into or from any vessel. Whoever violates any such regulation shall forfeit not more than one thousand dollars."

tive intent to preclude or preempt municipalities from acting in this area and that the enforcement of the regulation would frustrate the legislative purpose of these statutes, in violation of the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution.[9] The plaintiffs' reference to the Home Rule Amendment is misplaced. When the Legislature enacted the Home Rule Amendment, it granted municipalities broad powers that the local governments did not hold prior to the amendment. See *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs*, 363 Mass. 339, 358 (1973) ("The Home Rule Amendment grants cities and towns independent municipal powers which they did not previously inherently possess"). The Legislature restricted this grant of power by authorizing municipalities to exercise the power only to the extent that it "is not inconsistent with the constitution or laws enacted by the general court." Art. 89, § 6.

The plaintiffs contend that the board's regulation conflicts with the Legislature's existing statutory regulation of tobacco products. Citing G. L. c. 270, § 22, as indicative of legislative intent to protect restaurants against regulations that prohibit smoking, the plaintiffs maintain that the regulation is in "direct conflict" with the provisions of that statute. In assessing whether a reasonable health regulation is inconsistent with a State statute, we will afford the local board " 'considerable latitude,' requiring a 'sharp conflict' between the [regulation] and the statute before invalidating the [regulation]." *Take Five Vending, Ltd.* v. *Provincetown, supra* at 744, quoting *Bloom* v. *Worcester*, 363 Mass. 136, 154 (1973). See *Patton* v. *Marlborough, supra* at 751-752 (same conflict analysis applies to regulations promulgated by boards of health). "Such a conflict 'appears when either the legislative intent to preclude local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved in the face of the local [regulation].' " *Take Five Vending, Ltd.* v. *Provincetown, supra* at 744, quoting *Grace* v. *Brookline*, 379 Mass. 43, 54 (1979).

General Laws c. 270, § 22, inserted by St. 1987, c. 759, § 3,

[9]Article 89, § 6, of the Amendments to the Massachusetts Constitution, the Home Rule Amendment, provides in pertinent part: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight . . . ."

prohibits smoking in court houses, schools, colleges, universities, museums, libraries, trains, airplanes, waiting areas of airports or health care facilities, any public building, and other various locations, except in a limited area specifically designated as a smoking area. Section 22 also restricts smoking in restaurants as follows:

> "No person shall smoke in any restaurant with a seating capacity of seventy-five or more persons, except in an area which has been specifically designated as a smoking area. In such case, smoking may be permitted in an area or areas that have been specifically designated by notice or sign, only if nonsmoking areas of sufficient size and capacity are available to accommodate nonsmokers. Smoking and nonsmoking areas in any restaurant need not be separated by walls, partitions or other physical barriers; provided, however, that nonsmoking areas in any part of a restaurant, as provided herein, shall be no less than two hundred square feet of floor space."

When the Legislature enacted St. 1987, c. 759, it provided that nothing in the act prevented municipalities from regulating smoking more strictly in public places: "Nothing in this act shall be construed to permit smoking in any area in which smoking is or may hereafter be prohibited by law including, without limiting the generality of the foregoing, any other provision of the law or ordinance or by-law or any fire, health or safety regulation." St. 1987, c. 759, § 5.

Thus, § 5 specifically authorizes municipalities to impose additional regulation on areas covered by the statute. In addition, the statutory language of G. L. c. 270, § 22, itself defeats an assertion of preemption. See *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977) ("statutory language itself is the principal source of insight into the legislative purpose").[10] General Laws c. 270, § 22, sets forth minimum Statewide restrictions on

---

[10]The plaintiffs argue that St. 1987, c. 759, § 4, which authorizes the Department of Public Health to promulgate rules and regulations necessary to implement the provisions of G. L. c. 270, § 22, preempts local regulation. Section 4 provides: "The department of public health shall promulgate such rules and regulations as may be necessary to implement the provisions of this act. Said rules and regulations shall include the provision that copies of any complaints under section twenty-two of chapter two hundred and seventy of the General Laws shall be filed with said department." There is no indication

smoking in restaurants to protect and accommodate the nonsmoking public. The board's ban placing additional restrictions on smoking furthers, rather than frustrates, this intent. Accordingly, the board's regulation does not conflict with G. L. c. 270, § 22.

The plaintiffs' next contention is that the Legislature's delegation of regulatory authority to local boards of health in G. L. c. 111, § 31, violates art. 30 of the Massachusetts Declaration of Rights, which provides for governmental separation of powers. "The doctrine of separation of powers encompasses the general principle that the Legislature cannot delegate the power to make laws." *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, 406 Mass. 162, 171 (1989). Whether a particular delegation of power is proper is "a question of degree." *Id.* See *Opinion of the Justices*, 328 Mass. 674, 676 (1952) ("principle that legislative power cannot be delegated is not . . . applied in all instances with absolute literal inflexibility"). In reviewing a claim of improper delegation of legislative power, we consider: "(1) Did the Legislature delegate the making of fundamental policy decisions, rather than just the implementation of legislatively determined policy; (2) does the act provide adequate direction for implementation, either in the form of statutory standards or, if the [local authority] is to develop the standards, sufficient guidance to enable [it] to do so; and (3) does the act provide safeguards such that abuses of discretion can be controlled?" *Construction Indus. of Mass.* v. *Commissioner of Labor & Indus.*, *supra*, quoting *Chelmsford Trailer Park, Inc.* v. *Chelmsford*, 393 Mass. 186, 190 (1984).

The board's regulation satisfies these standards. First, the Legislature has made the policy decision that public health matters affecting local communities may be the subject of reasonable municipal regulations. G. L. c. 111, § 31. The appropriateness of this delegation is rooted in the legal history of this

in this statutory language that the Legislature intended to confer exclusive regulatory jurisdiction on the Department of Public Health. Further, § 4 was passed in conjunction with § 5. "Sections of the same chapter are to be interpreted . . . so as to constitute an harmonious and consistent body of laws." *Johnson* v. *Johnson*, 425 Mass. 693, 696 (1997), quoting *Gosselin* v. *Gosselin*, 1 Mass. App. Ct. 146, 148 (1973). When read together, § 4 authorizes the Department of Public Health to promulgate rules and regulations to fulfil the Legislature's intended prohibitions on smoking, while § 5 expressly permits local communities to regulate or prohibit smoking altogether beyond the statutorily imposed minimum standards.

Commonwealth. See *Baker* v. *Boston*, 12 Pick. 184, 192-193 (1831) (noting validity of power held by municipalities to preserve "public health"); *Brodbine* v. *Revere*, 182 Mass. 598, 601 (1903) (noting validity of legislation delegating regulatory authority on public health matters to local boards of health "has long been recognized"). Further, with specific regard to ETS regulation, the Legislature has already made the determination that smoking should be prohibited or regulated in certain public locations, including restaurants, see G. L. c. 270, § 22, and has explicitly left municipalities, and their boards of health, the power to implement stricter regulations on smoking in public places. See St. 1987, c. 759, § 5.

Second, in view of the long-standing tradition of municipal regulation of local health matters, the Legislature has provided appropriate guidance for the implementation of regulations by requiring that they address the "health" of the community and that they be "reasonable." *Chelmsford Trailer Park, Inc.* v. *Chelmsford, supra* at 190 ("Legislature may delegate to a board . . . the details of a policy adopted by the Legislature"). *Bay State Harness Horse Racing & Breeding Ass'n* v. *State Racing Comm'n*, 342 Mass. 694, 699 (1961) (although statute furnished "few specific standards," delegation valid where general standards of "public interest, convenience, and necessity" could be implied). *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 118 (1955), and cases cited (degree of certainty with which standards for exercise of discretion are set up depends on subject matter and circumstances). In regard to the third consideration, these limitations on content and reasonableness sufficiently demarcate the boundaries of regulatory discretion so that the act provides safeguards to control abuses of discretion. Parties who believe that a board's regulation has exceeded proper boundaries may seek judicial review of the regulation, pursuant to an action for declaratory relief. G. L. c. 231A.[11]

Finally, the plaintiffs assert that the board's regulation violates the town's charter. Section 1-3 of the charter, entitled "Division of Powers," declares "[a]ll legislative powers of the town shall be exercised by a town council." The charter further provides,

---

[11]Section 2 of G. L. c. 231A provides that the declaratory judgment procedure "may be used to secure determinations of right[s] . . . under . . . a charter, statute, municipal ordinance or by-law, or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination."

however: *"Except as otherwise provided by law or by the charter*, all powers of the town shall be vested in the town council which shall provide for their exercise and for the performance of all duties and obligation [*sic*] imposed on the town by law" (emphasis added). Charter of the Town of Barnstable § 2-3. In 1991, the Barnstable town council adopted an administrative code, which the charter defines as "a written description of the administrative organization of town offices, departments and multiple member bodies. The administrative code shall state the . . . general powers and duties of each town office department and multiple member body." § 9-4(a). The code provides that "regulatory" standing committees have "legal authority to promulgate rules and regulations, decide individual cases and enact policy." Barnstable Administrative Code § 1.09(b). Section 16 of the code establishes the board as a standing committee, defining the board as "an advisory and regulatory committee of the Town." Barnstable Administrative Code §§ 16.01-16.02.[12] Accordingly, the town council, much like the Legislature, has delegated regulatory authority to the board to preserve and protect the town's public health.[13] For the foregoing reasons, we conclude that the Superior Court judge properly ruled that the plaintiffs failed to demonstrate a likelihood of success on the merits.

That the plaintiffs failed to establish a likelihood of success on the merits of their claim is sufficient to deny injunctive relief. We note that the plaintiffs also failed to show irreparable harm and that they failed to show that issuance of the injunction would serve the public interest. The plaintiffs have argued in their application for a preliminary injunction that the smoking ban would interfere with existing customer relationships and cause a loss of business income. Economic harm alone,

---

[12]The full text states: "The Board of Health seeks to preserve and maintain the Town's public health standards and protect its environmental resources by educational means and by strict enforcement of various regulations, ordinances, State Health Codes, General Laws, in particular MGL Chapter 111, and Federal law. The Board carries out duties and responsibilities assigned by either state or local legislation, as these primarily concern public health standards and protection of environmental resources. The Board establishes policies and programs for implementation by the Health department. The Board of Health is an advisory and regulatory committee of the Town." Barnstable Administrative Code § 16.02.

[13]Even without this creation of municipal authority, the board has been given the necessary authority by the Legislature as discussed above.

however, will not suffice as irreparable harm unless "the loss threatens the very existence of the movant's business." *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 399 Mass. 640, 643 (1987). There is no suggestion to that effect. The only evidence on this issue consisted of two statistical studies offered by the board showing that smoking restrictions in restaurants and bars had little to no effect on restaurant revenues. A 1997 study by the Center for Health Economics Research entitled, Effect of Local Smoke-Free Restaurant Policies on Restaurant Revenue in Massachusetts,[14] reported preliminary findings that "[t]here is no support for the hypothesis that restaurant smoking restrictions reduced restaurant receipts."[15] Finally, in light of the scientific support linking ETS to adverse health effects, the Superior Court judge properly determined that the issuance of an injunction would not serve the public interest.

The Superior Court order denying the plaintiffs' request for a preliminary injunction is affirmed.

*So ordered.*

Justice Abrams participated in the deliberation on this case, but retired before the opinion was issued.

---

[14]The study analyzed the "taxable meals receipts data collected by the Massachusetts Department of Revenue . . . for the period January 1992 through December 1995." The study compared the receipts data collected from twenty-nine municipalities that adopted "highly restrictive" smoking policies to receipts data collected from twenty-nine municipalities that did not adopt such policies. The study defines a "highly restrictive" smoking policy as "any city ordinance, town by-law, or local board of health regulation that completely restricts smoking in restaurants or confines smoking to separate, enclosed, and separately ventilated sections of restaurants."

[15]The preliminary results also showed that the communities that had adopted smoking restrictions in restaurants had a combined increase in restaurant receipts.