McCann, J.

INTRODUCTION

For the plaintiffs — Michael J. Tremblay, Esq. For the defendants — Mark A. Goldstein, Esq.
The plaintiffs Verified Complaint for Equitable Relief and Declaratory Judgment is in the following three counts: (I) action for injunction; (II) action for declaratory relief; and (III) action for declaratory relief. The plaintiffs are each private clubs. The defendant, Board of Health of Athol, passed a regulation prohibiting smoking in private clubs. The plaintiffs seek to enjoin the town from enforcing the regulation against the plaintiffs and a determination that the action of the Board is not legal.

FACTUAL BACKGROUND

The American Lithuanian Naturalization Club, Athol, Mass., Inc. (Lithuanian Club), the Athol Franco-American Naturalization Club, Inc. (French Club) and the American Legion Post #102, Inc. (the Legion) all seek injunctive relief in their complaint. The matter came before the court on a Short Order of Notice on a Preliminary Injunction. Counsel presented their respective cases, factual and legal. It was apparent to this Court that the facts are not in dispute. The Court invited counsel to consult with their respective clients, who were present in court, to determine whether counsel wished to submit the matter to the Court on an agreed statement of the facts, which facts are set forth in the pleadings and the memorandum. The Court recessed so that counsel could speak to their respective clients. Court resumed and both counsel reported to the Court that all of their respective clients were agreeable to this Court hearing the matter on the agreed statement of facts.
With that in mind, and upon a presentation of agreed facts and argument, this Court makes the following findings of fact and rulings of law, and order.

Lithuanian Club

The Lithuanian Club is a private club. It owns its own building which consists of a single-story building. It has an all alcoholic beverage “club” license.[1] The right half of the building is the primary members social quarters. It consists of a bar, rest room and storage area. The opposite side of the building or left half of the building is a meeting room with a kitchen. The meeting room is used for club meetings and social events. Members may reserve the room for small banquets and similar gatherings of members and their invited guests. By-laws of the club and the house rules preclude availability of the club premises to the general public[2] except during sanctioned social events. It is accessible to members only. It has a separate street entrance from the right side. The meeting room can be completely closed off by locked doors from the general members social area.
The Lithuanian property is not open to the public. The general public may only have access to the building during sanctioned hall rental events or fund raisers. When the public does have access to the building at such events, smoking is prohibited throughout the entire building as required by the State Anti-Smoking Statute.
Doors to the building are locked at all times. Signs are posted on the doors indicating that entrance to the building is restricted to members only. Members are issued a key card to obtain admission. The outside entrance doors to the meeting room are locked at all times except when the rooms are in actual use. According to the by-laws, Lithuanian’s property is owned by its membership. Under its by-laws, only adults can become members. It is organized and existing as a charitable organization under G.L.c. 180. It regularly conducts fund raising activities for local and national charities consistent with its mission statement.

The French Club

The French Club is a private club. It holds an alcoholic beverage license issued as a “club” license.[3] It owns its own building. The French Club consists of a single-stoiy building. The left half of the building is *655 the primary members social quarters. It consists of a bar, rest room and storage area. The right half of the building consists of a meeting room, speed bar and a kitchen. The meeting room is used for club meetings and social events. It is available to members to reserve for small banquets and similar gatherings of members and their invited guests. Under its by-laws and house rules, it is not available to the general public but to members only. It has a separate street entrance from the left side or social quarters side. However, the French Club members social quarters cannot be completely closed off from the bar, rest room and storage area due to the lack of bathrooms.
The club is not open to the public.[4] The public may have access to the building only during sanctioned hall rental events or fund raisers. At such times, the club prohibits smoking throughout the entire building as required by the state Anti-Smoking Statute.
The doors to the building are locked at all times. There are signs posted on the doors indicating that the entrance to the building is restricted to members only. Members are issued a key card to obtain admission. The outside entrance doors to the meeting rooms are locked at all times except when the rooms are actually used. Under its bylaws, the French Club is owned by its membership. Under its bylaws, only adults can become members. It is duly organized and existing as a charitable corporation under G.L.c. 180. It regularly conducts fund raising activities for local and national charities consistent with its mission statement.
The American Legion
The American Legion is a private club. The general public may have access to the building only during sanctioned hall rental events or fund raisers. The club is not open to the public.[5] At such time that the public does have access, the club prohibits smoking throughout the entire building as required by the state Anti-Smoking Statute. The doors to the building are locked at all times. There are signs posted at the doors indicating that the entrance to the building is restricted to members only. It has an all alcoholic license.[6]
The members social area may be locked if necessary and admission limited to members only. However, for reasons of fire and emergency purposes, it has been the stated policy of the Legion to close the inside doors without locking them. The outside entrance doors to the meeting room are locked when not in use. According to its bylaws, the American Legion’s property is owned by its membership. According to its bylaws, only adults can become members.
All three clubs, the Lithuanian Club, the French Club and the American Legion, regularly conduct fund raising activities and raise funds for local charities consistent with their charters and their mission statements. They each provide scholarships to local students and sponsor local sports teams. All three clubs’ guests may be admitted only when accompanied by a member and upon signing a guest register. The American Legion has labor performed by members on a volunteer basis including bartenders. The Lithuanian Club and French Club have labor performed by paid members including paid bartenders who are members.
Many of the members of each of the clubs are senior citizens. They regularly visit the clubs on a daily basis for social interaction with their friends. A majority of the members smoke. Some members have chosen to socialize in these clubs because they cannot smoke in public restaurants, cafes, bars or town public buildings all of which are restricted from smoking by the state Anti-Smoking Statute. Some members have threatened that they will no longer socialize at the clubs if smoking is not permitted, but will seek out establishments in other municipalities that do not restrict smoking in private clubs, private residences or they may simply stay at home. This will affect the ability of the clubs to promote fraternal and social purposes among its membership and, if so, will cause a decline in revenues from the bar. That will affect the income generated by the clubs and their ability to continue charitable work.
Four significant events occurred within a very short period of time which have bearing on the issue before this Court. The first event: Prior to July 5, 2004, the Commonwealth of Massachusetts had an established Anti-Smoking Statute which was set forth in G.L.c. 270, §22. The provisions of that statute are set forth in full in Appendix A which is attached hereto and incorporated herein as though set forth in full. That statute had been in effect since January of 1998 and remained in effect until January 5, 2004 at which time the Legislature essentially rewrote the whole Anti-Smoking Statute.
The second event: In 2003, the Supreme Judicial Court decided the case of Loyal Order of Moose, Inc., Yarmouth Lodge No. 2270 v. Board of Health of Yarmouth et al, 439 Mass. 597 (2003). In that case, the plaintiff commenced an action against the Town and its Board of Health seeking declaratory and injunctive relief in connection with the Board’s enforcement of two municipal regulations which prohibited smoking on the Lodge’s premises. A preliminary injunction was denied by the Superior Court Justice. The Lodge appealed the denial of the preliminary injunction under G.L.c. 231, §118 and the SJC granted application for direct appellate review. For reasons stated in that case, the SJC vacated the order denying the Lodge’s application for preliminary relief and enjoined the Town from enforcing the regulation prohibiting smoking within the Lodge’s premises and remanded the case back for a hearing on the merits. It is noted that the Loyal Order of Moose case dealt only with whether or not a preliminary injunction should issue and did *656 not deal with an appeal from a judgment on the final adjudication of the case.
The third event: Subsequent to that decision, the Massachusetts Legislature on July 5, 2004, adopted the so-called Massachusetts State Wide Smoke Free Work Place Law. It essentially rewrote all of the provisions of G.L.c. 270, §22. It is set forth in full in Appendix B. The provisions pertinent to this case provide as follows:
M.G.L.A. 270 §22 MASSACHUSETTS GENERAL LAWS ANNOTATED PART IV. CRIMES, PUNISHMENTS AND PROCEEDINGS IN CRIMINAL CASES TITLE 1. CRIMES AND PUNISHMENTS CHAPTER 270. CRIMES AGAINST PUBLIC HEALTH
§22. Smoking in public places
(a)As used in this section, the following words shall have the following meanings, unless the context requires otherwise:
“Employee,” an individual or person who performs a service for compensation for an employer at the employer’s workplace, including a contract employee, temporary employee, and independent contractor who performs a service in the employer’s workplace for more than a de minimis amount of time.
“Employer,” an individual, person, partnership, association, corporation, trust, organization, school, college, university or other educational institution or other legal entity, whether public, quasi-public, private, or nonprofit which uses the services of 1 or more employees at 1 or more workplaces, at any 1 time, including the commonwealth or its agencies, authorities or political subdivisions.
“Enclosed,” a space bounded by walls, with or without windows or fenestrations, continuous from floor to ceiling and enclosed by 1 or more doors, including but not limited to an office, function room or hallway.
“Membership association,” a not-for-profit entity that has been established and operates, for a charitable, philanthropic, civic, social, benevolent educational, religious, athletic, recreation or similar purpose, and is comprised of members who collectively belong to:
(i) a society, organization or association of a fraternal nature that operates under the lodge system, and having 1 or more affiliated chapters or branches incorporated in any state; or
(ii) a corporation organized under chapter 180 ; or
(iii) an established religious place of worship or instruction in the commonwealth whose real or personal property is exempt from taxation; or
(iv) a veterans’ organization incorporated or chartered by the Congress of the United States, or otherwise, having 1 or more affiliated chapters or branches incorporated in any state.
“Smoking" or “smoke,” the lighting of a cigar, cigarette, pipe or other tobacco product or possessing a lighted cigar, cigarette, pipe or other tobacco or non-tobacco product designed to be combusted and inhaled.
“Workplace,” an indoor area, structure or facility or a portion thereof, at which 1 or more employees perform a service for compensation for the employer, other enclosed spaces rented to or otherwise used by the public; and where the employer has the right or authority to exercise control over the space.
“Work space or work spaces,” an enclosed area occupied by an employee during the course of his employment.
(b)(1) It shall be the responsibility of the employer to provide a smoke-free environment for all employees working in an enclosed workplace.
(2) Smoking shall be prohibited in work places, work spaces, common work areas, classrooms, conference and meeting rooms, offices, elevators, hallways, medical facilities, cafeterias, employee lounges, staircases, restrooms, restaurants, cafes, coffee shops, food courts or concessions, supermarkets or retail food outlets, bars, taverns, or in a place where food or drink is sold to the public and consumed on the premise as part of a business required to collect state meals tax on the purchase; or in a train, airplane, theatre, concert hall, exhibition hall, convention center, auditorium, arena, or stadium open to the public; or in a school, college, university, museum, library, health care facility as defined in section 9C of chapter 112, group child care center, school age child care center, family child care center, school age day or overnight camp building, or on premises where activities are licensed under section 38 of chapter 10 or in or upon any public transportation conveyance or in any airport, train station, bus station, transportation passenger terminal, or enclosed outdoor platform.
(c) Notwithstanding subsection (b), smoking maybe permitted in the following places and circumstances:
(1) Private residences; except during such time when the residence is utilized as part of a business as a group child care center, school age daycare center, school age day or overnight camp, or a facility licensed by the office of child care services or as a health care related office or facility;
(2)(i) premises occupied by a membership association, if the premises is owned, or under a written lease for a term of not less than 90 consecutive days, by the association during the time of the permitted activity if the premises are not located in a public building; but no smoking shall be permitted in an enclosed indoor space of a membership association during the time the space is:
*657 (A) open to the public; or
(B) occupied by a non-member who is not an invited guest of a member or an employee of the association; or
(C) rented from the association for a fee or other agreement that compensates the association for the use of such space.
(ii) Smoking may be permitted in an enclosed indoor space of a membership association at all times, if the space is restricted by the association to admittance only of its members, the invited guest of a member, and the employees of the membership association. A person who is a contract employee, temporary employee, or independent contractor shall not be considered an employee of a membership association under this subsection. A person who is a member of an affiliated chapter or branch of a membership association that is fraternal in nature operating under the lodge system, and is visiting the affiliated association, shall be an invited guest for the purposes of this subsection.
(j) Nothing in this section shall permit smoking in an area in which smoking is or may hereafter be prohibited by law including, without limitation: any other law or ordinance or by-law or any fire, health or safety regulation. Nothing in this section shall preempt further limitation of smoking by the commonwealth or any department, agency or political subdivision of the commonwealth.
(l) An owner, manager or other person in control of a building, vehicle or vessel who violates this section, in a manner other than by smoking in a place where smoking is prohibited, shall be punished by a fine of $100 for the first violation; $200 for a second violation occurring within 2 years of the date of the first offense; and $300 for a third or subsequent violation within 2 years of the second violation. Each calendar day on which a violation occurs shall be considered a separate offense. If an owner, manager or other person in control of a building, vehicle or vessel violates this section repeatedly, demonstrating egregious noncompliance as defined by regulation of the department of public health, the local board of health may revoke or suspend the license to operate and shall send notice of the revocation or suspension to the department of public health. The department of public health shall promulgate regulations to implement this section including, but not limited to notice, collection, and reporting of the fines or license action, and defining uniform standards that warrant license suspension or revocation.
(m)(l) The local board of health, the department of public health, the local inspection department or the equivalent, a municipal government or its agent and the alcoholic beverages control commission shall enforce this section. In addition, in the city of Boston, the commissioner of health, and his authorized agents shall enforce this section.
(2) An individual or person who violates this section by smoking in a place where smoking is prohibited shall be subj ect to a civil penally of $ 100 for each violation. As an alternative to criminal prosecution, a violation of subsection (1) may also be considered a civil violation. Each enforcing agency under paragraph (1) shall dispose of a civil violation of this section by the non-criminal method of disposition procedures contained in section 2 ID of chapter 40, without an enabling ordinance or by-law, or by the equivalent of these procedures by a state agency under regulations of the department of public health. The disposition of fines assessed under this section shall be subject to section 188 of chapter 111. Fines assessed by the commonwealth or its agents shall be subject to section 2 of chapter 29. In a city or town having an ordinance or by-law that imposes a fine greater than the fine imposed by this section, the ordinance or by-law shall prevail over this section.
(4) The supreme judicial court or the superior court shall issue appropriate orders to enforce this section and any regulation under it, at the request of any agency mentioned in paragraph (1).
(5) A fine or fee collected by the commonwealth under this section shall be used for the enforcement or for educational programs on the harmful effects of tobacco.
(o) The department of public health may issue regulations to implement this section.
The fourth event; Five months after the revised version of c. 270, §22 was passed on November 9, 2004, the Athol Board of Health passed its Anti-Smoking Regulation as it applies to private clubs which states in pertinent part as follows:
Membership Association (also known as a private club):
A not-for-profit entity that has been established and operates, for a charitable, philanthropic, civic, social, benevolent, educational, religious, athletic, recreation or other similar purpose, and is comprised of members who collectively belong to (i) a society, organization or association of a fraternal nature that operates under the lodge system, and having one or more affiliated chapters or branches incorporated in any state; or (ii) a corporation organized under c. 180; or (iii) an established religious place of worship or institution in the Commonwealth whose real or personal property is exempt from taxation; or (iv) a veteran’s organization incorpo *658 rate or chartered by the Congress of the United States, or otherwise, having one or more affiliated chapters or branches incorporated in any state. Except for a religious place of worshiper instruction, an entity shall not be a membership association for purposes of this definition, unless individual membership containing not less than full membership costs and benefits is required for all members of the association for a period of not less than ninety days . . .
D. Smoking Prohibited:
1. Smoking is prohibited in the enclosed areas of membership associations, also known as private clubs.
2. It shall be unlawful for any person having control of the premises upon which smoking is prohibited by this regulation, or business agent or designee or such membership association, to permit a violation of this regulation.
3. Smoking is prohibited within 8’ of any entrance to any workplace . . .
F. Violations:
Any membership association, person having control of the business . . . who violates any provision of this regulation may be penalized ... by filing a criminal complaint at the appropriate venue . . . V.T. violators shall receive:
1. In the case of a first violation, a fine of one hundred dollars ($100);
2. In the case of a second violation within twenty-four months of the date of the first violation, a fine of two hundred dollars ($200);
3. Three or more violations within twenty-four months of the current violation including the current violation, a fine of three hundred dollars ($300).
The defendants, Joan E. Hamlett, Lee Edward Chauvette and Norma Purple are three individuals who comprise the Board of Health for the Town of Athol.
Joan Hamlett is employed as a Director of the “Boards of Health Tobacco Control Alliance.” She is the supervisor of Jennifer Susen-Roy who conducts tobacco control compliance in the Town of Athol. Hamlett who works for the Board of Health Tobacco Control Alliance works for an organization whose purpose is to eliminate the use of tobacco. The staff person, Susen-Roy, is provided to the town free of charge. Board member Joan E. Hamlett did not recuse herself when the vote was taken on the adoption of the Athol regulation and voted in favor of it.
Edward Chauvette also voted for the adoptions. Norma Purple owned and operated a business establishment known as a smoke shop and because of the apparent conflict of interest she recused herself from voting on the regulation leaving only Joan Hamlett and Edward Chauvette voting in favor. Consequently, as a result of the vote, the regulation was adopted by the Town of Athol. It is now being enforced by the Board of Health against the three private clubs. That action precipitated this lawsuit.

DISCUSSION

The newly enacted and so called Massachusetts Smoke Free Workplace Law prohibits smoking in a vast majority of workplaces in Massachusetts. It is comparable to laws and regulations enacted in over a hundred Massachusetts cities and towns. Massachusetts is the sixth state to mandate smoke-free workplaces and joins Connecticut, New York, Maine, Delaware and California.
The new Massachusetts Anti-Smoking Law covers all employers with one or more employees with limited exceptions. Summaries of the law are attainable through Testa, Hurwitz & Thibeault at www.tht.com and the Massachusetts Tobacco Control Program, Massachusetts Department of Public Health at www.massgov/dph/mtcp.
There are several significant factors to be considered in the issue before the Court. The Loyal Order of Moose case was decided while the predecessor statute was in effect. After the case was decided, Massachusetts then passed the so-called Smoke Free Workplace Law.
The statute heading is “Smoking in Public Places.” It involves itself with crimes and punishments against public health. The statute does not define public. The common definitions of public are (1) pertaining to or affecting a population or community as a whole, (2) done, made, acting for the community as a whole, (3) open to all persons, (4) pertaining to or being in the service of a community, (5) open to the view of all, (6) pertaining or devoted to the welfare or the well being of the community, (7) universal, and (8) people constituting a community. Random House Webster’s Collegiate Dictionary, 1st Edition 1991, page 1053.
There is no question that the three clubs are each private membership associations, all organized under c. 180 and the veteran’s organization under the auspices of the Congress of the United States. The state statute as crafted is very clear that it seeks to prevent smoking in public buildings and workplaces and in paragraphs (b)(1), (2) and (3) sets forth a plethora of workplaces and in areas where the public congregate where smoking is prohibited. It is clear that the Legislature was focusing on places where the public would congregate.
Sections 22 (c) (1 -9) set forth a series of nine separate exceptions where smoking may be permitted including private residences, premises occupied by membership associations, limited and designated guest hotel rooms, retail tobacco stores, smoking bars, a theatrical performer on stage if smoking is part of the production, medical or scientific research, religious ceremonies where smoking is part of the ritual and tobacco farmers.
Subsection (2) (i) exempts membership associations and provides that if the premises is owned and not located in a public building, smoking is permitted except *659 in three specific instances (a) when open to the public, (b) when occupied by a nonmember who is not an invited guest or (c) when the premises is rented for a fee.
In subsection (ii) smoking is permitted in the enclosed indoor space of the membership association if the space is restricted by the association to admittance of its members, invited guests and employees of the membership association. A person who is a contract employee, temporary employee or independent contractor shall not be considered an employee of the membership under this subsection. The local Board of Health or the Department of Public Health or the local Inspection Department is given the authority to enforce the statute under subsection (m)(l).
It was after the Loyal Order of Moose, Inc. case and the revision of c. 270, §22 in 2004 that the Town of Athol passed its regulation. In substance the Athol regulation prohibits smoking in the enclosed areas of membership associations also known as private clubs. Such private clubs are, in fact, stated exceptions to the Anti-Smoking Law under the state statute.
This Court does not question whether the Athol Board of Health has the authority to make reasonable health regulations under c. 111, §31. It readily recognizes that it does.
The Court has reviewed all of the authority cited by the respondent Town. Each and eveiy one of those cases deal with matters which substantially affected the public safety of a city or town or population. None dealt with private membership clubs. The cases are starkly different from the rights of members of a private club who are contained within their own building by virtue of their voluntary membership and are not outside affecting the general public. For example, none of the cases cited by the defendants deal with private clubs. Instead, they all. deal with public aspects of community interaction. Hamel v. Board of Health of Edgartown, 40 Mass.App.Ct 420 (1996), dealt with wastewater flow of effluent as it affected an aquifer. The Board of Health of Woburn v. Sousa, 338 Mass. 547 (1959), dealt with the maintenance of a piggery within city limits. Commonwealth v. Drew, 208 Mass. 493 (1911), dealt with the sale of uncapped milk to the public. Brielman v. Monroe, Comm’n Pub Health of Pittsfield, 310 Mass. 407 (1938), dealt with the issue of requiring pasteurization of milk when sold to the public. Ralston v. Hawes, 334 Mass. 51 (1956), dealt with the transportation of swine on public ways. American Grain Products Processing Institute v. Department of Public Health, 392 Mass. 309 (1984), and Purity Supreme, Inc. v. Attorney General 380 Mass. 762 (1980), dealt with the fixing of prices of goods on shelves selling goods to the public. Arthur D. Little, Inc. v. Commissioner of Health and Hospitals of Cambridge, 395 Mass. 535 (1985), dealt with the disposal of extremely toxic chemical warfare agents. Adrusick v. Board of Health of Haverhill, 324 Mass. 129 (1949), dealt with the wrapping of bakery products for sale to the public. Henry van Dime, Pet. & c., 23 Mass. 187 (1828), dealt with removal of house dirt and offal (trimmings from butchered animals) from the city. Lawrence v. Board of Registration and Medicine, 239 Mass. 424 (1921), dealt with the revocation of a physician’s license. Tri-Nel Management, Inc. et al. v. Board of Health of Barnstable, 433 Mass. 217 (2001), and Take Five Vending Limited v. Provincetown, 415 Mass. 741 (1983), dealt with the sale of cigarettes from vending machines to the public. Broadvine v. Revere, 182 Mass. 598 (1902), dealt with driving of wagons or other vehicles on park ways. Chelmsford Trailer Park, Inc. v. Chelmsford, 393 Mass. 186 (1984), dealt with rent controls in mobile parks. Town of Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107 (1984), dealt with hazardous wastes affecting the community. Independence Park, Inc. v. Board of Health of Barnstable, 403 Mass. 477 (1988), dealt with the approval of a subdivision as it affected public sewerage. Financial Insurance Company of America v. City of Boston, 369 Mass. 542 (1976), dealt with rent control. Lovequist v. Conservation Commission of Dennis, 379 Mass. 7 (1979), dealt with the Wetlands Act and the construction of a road over a cranberry bog. Patton v. City of Marlborough, 415 Mass. 750 (1993), dealt with cigarette vending machine accessability by minors in a gas station. Marshall Family Skateland, Inc. v. Marshfield, 389 Mass. 436 (1983), dealt with regulations of amusement devices serving the public within a town.
Even though the defendants cite all of these cases for the proposition that the local Board of Health has substantial power to regulate in the public sector, which they do, in each instance those cases involved a factual situation which directly affected the public, and did not involve a private membership club.
Quite to the contrary. Private membership associations do not directly affect the public, except in very limited circumstances. In those limited circumstances when their facility is open to the public, or when occupied by a nonmember who is an uninvited guest, or when the facility is rented for a fee, no smoking is allowed. In all of those instances, the plaintiffs complied with the now existing Anti-Smoking Statute, as they did prior to the then existing statute.
The Town places great emphasis on subsection (j) of G.L.c. 270, §22 which provides:
(j) Nothing in this section shall permit smoking in an area in which smoking is or may hereafter be prohibited by law including, without limitation: any other law or ordinance or by-law or any fire, health or safety regulation. Nothing in this section shall preempt further limitation of smoking by the commonwealth or any department, agency or political subdivision of the commonwealth.
To carry the defendant Board of Health’s premise to its logical conclusion, the Board would be allowed to prohibit smoking in all of the nine areas exempted by the Legislature including private residences, membership associations, religious ceremonies and at the *660 other several enumerated exemptions. This Court cannot conclude that the Legislature intended to grant a local Board of Health that broad an authority over smoking in private membership clubs.
The tenor and the focus of the Anti-Smoking Statute is the workplace and places where the general public congregate. The Legislature specifically exempted private membership clubs. To interpret subsection (j) in the manner suggested by the defendants defies the logic and reasoning clearly set forth in the face of the statute. To accept the premise of the defendants would simply mean that the Legislature could eliminate all of section 22, and leave the total concept of overseeing smoking to the respective Boards of Health of individual communities. The enactment of the regulation by the Board of Health clearly flies in the face of the statute carefully and clearly crafted by the Legislature to exempt private membership clubs.
Private clubs are membership organizations which people join because they want to. Some, like the American Legion, have a military component. Persons who, today, make up the general membership are those who fought in World War II, the Korean War, the Viet Nam War, the Persian Gulf War, the Iraq War, and perhaps other armed conflicts around the world. Some are elderly. All would be obligated under the town by law to refrain from smoking while inside their private quarters. They would be obligated under the bylaw to remain seven feet outside of the building in order to smoke regardless of the time of year or the weather conditions. Although the other two clubs, the Lithuanian Club and the French Club, do not have a military component, many of their members are elderly and would be under the same constraints. Members of these organizations joined by a voluntary membership — that is because they wanted to join knowing that smoking was and is permitted — and their voluntary association is totally devoid of any public involvement.
This Court finds that the plaintiffs will suffer irreparable harm if the regulation is enforced by the Athol Board of Health and the injury to the plaintiffs outweigh any potential damage injunctive relief might cause the defendants.
For the reasons stated, this Court rules that the action of the Board of Health of the Town of Athol as it applies to private clubs is unreasonable, arbitrary and capricious. The bylaw as enacted is declared to be NULL and VOID for those reasons.
Because this Court has determined that the action of the defendants was unreasonable, arbitrary and capricious in the enactment of the bylaw in question, this Court finds no need to address the remaining grounds raised by the plaintiffs, i.e., that the regulation is (1) vague and overbroad; (2) that the regulation improperly restricts the rights of assembly; (3) that the plaintiffs are deprived of their properly rights in violation of the United States Constitution; (4) that the regulation restricts the free exercise of religion under Article 2 of the Massachusetts Constitution; (5) that the regulation is an unreasonable substantial and serious interference with the right of privacy; (6) that the action of a Board member is tainted by an apparent conflict of interest; and (7) that the state statute preempts local regulations in regard to private clubs.

ORDER

All parties having appeared and the matter having been submitted to the Court on an agreed statement of facts, it is therefore ORDERED:
1. Judgment shall enter in favor of the American Lithuanian Naturalization Club, Athol, Mass., Inc., Athol Franco-American Naturalization Club, Inc. and American Legion Post #102, Inc. declaring pursuant to G.L.c. 30A, §7 and c. 231A that the Athol Board of Health regulation of November 9, 2004 entitled “Regulation prohibiting smoking in membership associations” is unreasonable, arbitrary and capricious and exceeds the local Board’s authority under G.L.c. Ill and is therefore VOID and UNENFORCEABLE.
2. That the defendants Joan E. Hamlett, Edward Chauvette and Norma Purple as they constitute the Board of Health of Athol and the Town of Athol and their agents, servants and employees and all persons acting in concert with or under their authority are hereby PERMANENTLY ENJOINED from enforcing the provisions of the Athol Board of Health regulations of November 9, 2004 entitled “Regulation prohibiting smoking in membership associations” against the activities of the American Lithuanian Naturalization Club, Athol, Mass., Inc., Athol Franco-American Naturalization Club, Inc. and American Legion Post #102, Inc.

G.L.c. 138, §1 defines a “club” for liquor licensing purposes as a corporation chartered for civic, educational, charitable, benevolent, religious, athletic, musical, agricultural or religious purposes, whether under federal or state law, and including any body or association lawfully operating under a charter granted by a parent body, and including organization or units “owning, hiring, or leasing a building, or space in a building," suitable and adequate for the reasonable and comfortable use and accommodation of its members.

G.L.c. 138, §12 permits club licensees “to sell such beverages to its members only, and also, subject to regulations made by the local licensing authorities, to guests introduced by members, and no others.” G.L.c. 140, §21E, the food service licensing statute, permits sales “to its stockholders or members and their guests, but to no others.” 204 CMR 2.15(1) provides: “A commercial club . . . restricts] admission to the licensed premises to persons who have paid an annual membership fee.”

See footnote 1.

See note 2.

See note 2.

See note 1.