van Gestel, J.
This matter comes before the Court on a complaint by Travelers Casualty and Surety Company of America, Inc. (“Travelers”) seeking injunctive and related relief in connection with indemnity rights under a certain Continuing Agreement of Indemnity with the defendants. .
BACKGROUND
Travelers has filed a verified complaint. Much of what follows, but not all, is taken from that complaint.
On November 5, 1997, Reliance Insurance Company (“Reliance”), along with other Reliance Insurance Companies, entered into a Continuing Agreement of Indemnity — Contractor’s Form (the “Indemnity Agreement”) with each of the named defendants. In consideration of the Indemnity Agreement, Reliance provided the defendants payment and performance bonds (the “Bonds”) for a real estate rehabilitation and construction project in Boston called “Theroch I.”
On May 31, 2000, Travelers succeeded to the interests of Reliance with respect to the Bonds referred to in the Indemnity Agreement.
The defendant Long Bay Management Company, d/b/a Long Bay Builders, Inc. (“Long Bay”), was the general contractor on the Theroch I project. The Massachusetts Housing Finance Agency (“MHFA”) was the owner of the project.
The Theroch I project was to be accomplished in three phases, with MHFA having the right and the obligation to initiate the start of each phase by a specific Notice to Proceed.
Although Long Bay substantially completed Phase I of the project, disputes arose between Long Bay and the MHFA. As a result of those disputes, in September 2000, Long Bay demanded arbitration (the “Arbitration”) against MHFA for payment for extra and additional work and an extension of time for performance. This arbitration is still pending and bears an American Arbitration Association Docket No. 11 110 01006 00.
By letter dated January 31, 2001, Long Bay purported to terminate the Construction Contract on grounds that MHFA was in default of its obligations. The prior demand for arbitration was, accordingly, amended.
On February 2,2001, MHFA purported to terminate Long Bay’s right to proceed under Phases II and III of the Construction Contract. MHFA then brought a counterclaim in the Arbitration.
MHFA, on February 5, 2001, called upon Travelers, pursuant to the Bonds, to perform the contract. A true copy of one of the Bonds is attached to the verified complaint. Among other things, the Bond attached provides that: “If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.”
In order to provide partial security for the Indemnity Agreement, Travelers recorded U.C.C. Financing Statements with the Secretary of State, the City Clerk of Boston and the Town Clerk of Milton, those being the places where the defendants reside or have their places of business.
Travelers then notified the defendants that it proposed to enter into an agreement with the MHFA to perform and complete Long Bay’s contract, without prejudice to the rights of Long Bay and Travelers to seek reimbursement for all damages sustained by them in the Arbitration proceedings and subject to the obligations of the defendants under the Indemnity Agreement. This agreement, between Travelers and MHFA, was executed on August 6, 2001.
Travelers then entered into a completion agreement with Bilt-Rite Construction, Inc., a general contractor, to complete the work for $10,650,000.
Paragraph 20 of the verified complaint is significant to the issues now before the Court and therefore is quoted in its entirety, as follows:
20. Unless Long Bay prevails in the arbitration, Travelers will sustain a loss in excess of $5,000,000 to perform and complete the Contract pursuant to the Bond. Defendants would then be obliged pursuant to the Continuing Agreement of Indemnity ... to pay Travelers for any and all loss incurred by Travelers in performing the Contract, including its attorneys fees. If Long Bay prevails in the arbitra *256 tion, Travelers has a security interest in the award pursuant to the Continuing Agreement of Indemnity and the Financing Statements for Traveler’s losses, costs, expenses and attorneys fees.
Although not referenced in the verified complaint, Travelers (under the name of Reliance), on November 13, 2001, filed a document in the Arbitration entitled “Memorandum of Reliance Insurance Company Pursuant to American Arbitration Association Construction Industry Arbitration R-33(b).” In significant part, this Memorandum recites Travelers’ assessment of the contest between Long Bay and the MHFA. The concluding paragraphs from Travelers' Memorandum are quoted in their entirety as follows:
On September 20, 2000, the Boston Fire Department issued an abatement order against MHFA for failure to supply [certain] cost data [regarding the installation of sprinklers in the common areas]. The Fire Department also commenced a criminal proceeding against the MHFA’s architect in the Municipal Court of the City of Boston. Finally, on November 1, 2000, MHFA submitted its cost data. On January 26, 2001, the Fire Department required the installation of automatic sprinklers in Phase I and also in Phases II and III.
On January 26, 2001 when the Fire Department issued its order, MHFA did not have any plans or specifications for the installation of the automatic sprinklers in the dwelling units in order to comply with the Fire Department’s order. This left Long Bay with no choice except to terminate its Contract with the owner. The termination was clearly authorized by the Contract, which provides that Long Bay could terminate for convenience as well as default.
MHFA never issued a notice to proceed to Long Bay for Phase II. Long Bay in turn never abandoned the work under Phase I and, therefore, was not in default of the contract.
After Long Bay terminated for default its contract with MHFA on January 31, 2001, MHFA on February 2, 2001 terminated Long Bay’s right to proceed with the Contract even though as of that date there was no notice to proceed with Phase II. On February 5, 2001, MHFA called upon Reliance pursuant to the Contract to perform the Contract.
While MHFA may dispute some details concerning Long Bay’s performance of Phase I, the fact of the matter is that there can be no substantial dispute about the foregoing recitation. There is no dispute that the Contract was divided into three phases, that Long Bay’s obligation was to perform Phase I after issuance of a notice to proceed, that Long Bay not only performed the base Contract but substantial change order work that probably constituted a cardinal change to the Contract and secured a Certificate of Legal Occupancy from the City of Boston Inspectional Services. There is also no dispute that the architect failed initially to comply with the statutory requirements of submitting a sprinkler plan to the City of Boston Fire Department. In January of 2001, the City of Boston Fire Department ordered installation in Phase I of an automatic sprinkler system.
The reason that MHFA terminated Long Bay’s right to proceed with the Contract was MHFA’s apparent lack of confidence that Long Bay could timely perform Phase II. Long Bay, however, at no time declined to perform Phase II. To the contrary, Long Bay stated to MHFA that upon receipt of a notice to proceed with Phase II, Long Bay was ready, willing and able to commence construction of Phase II.
Taking into account the essentially undisputed facts and sequence of events, the case crystallizes into a basic proposition of law. Because of MHFA’s lack of confidence in Long Bay’s ability to perform Phase II, MHFA anticipated that Long Bay would default on either Phase II or III. Whether there was any legitimacy to MHFA’s assumption is irrelevant. Under Massachusetts law, anticipatory breach is insignificant grounds upon which to maintain an action. Carrig v. Gilbert-Varker Corp., 314 Mass. 351, at 356 (1943). MHFA had no right, as a matter of law, to terminate Long Bay’s right to proceed for default. If MHFA desired Reliance to perform Phases II and III on the assumption that Reliance could do Phases II and III more efficiently than Long Bay, MHFA was required to terminate the Long Bay Contract for convenience and reimburse Reliance for the additional costs that Reliance would incur in performing Phases II and III.
It is in this context that Travelers complains that the defendants are about to sell many of their assets— management contracts, partnership interests and real estate — and alleges that unless enjoined therefrom, “Travelers will suffer immediate and irreparable damage.” Complaint Paragraphs 22 and 24.
DISCUSSION
In order to prevail on its requests for preliminary injunctive relief, Travelers bears the burden of showing: its likelihood of success on the merits; that it will suffer irreparable harm if the relief sought is not granted; and that its harm, without the relief, outweighs any harm to the defendants from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
The granting or denial of preliminary injunctive relief is a matter within the sound discretion of the Court. Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001).
The Court begins its assessment and balancing by turning first to the issue of likelihood of success on the merits.
*257 While Travelers may be entitled to some modest reimbursement for its investigation of the situation between Long Bay and MHFA and for considering MHFA’s demand that it complete the Contract, the heart — or better said, the bulk — of Travelers’ alleged losses depends on the results of the Arbitration between Long Bay and MHFA. Recall that Travelers, in Paragraph 20 of its complaint, stated that “unless Long Bay prevails in .the arbitration, Travelers will sustain a loss in excess of $5,000,000 . . .” In short, this large loss will only occur if Long Bay loses in the Arbitration. Otherwise, by that same Paragraph, “Travelers has a security interest in the award [to Long Bay] pursuant to the Continuing Agreement of Indemnity and the Financing Statements for Traveler’s losses, costs, expenses and attorneys fees.” But those latter amounts — which are not quantified — are nothing like $5,000,000.[1]
The Court then reads Travelers’ own assessment of the likelihood of Long Bay succeeding in the Arbitration, quoted above at pp. 4 and 5. Even if those statements made by Travelers in the arbitration are not considered allegations in a pleading in a civil action, and therefore binding on it, see G.L.c. 231, Sec. 87, they surely can be considered by this Court in assessing Long Bay’s likelihood of success in the Arbitration and Travelers’ consequent likelihood of a $5,000,000 loss in this case. Those allegations, made by Travelers, are the only allegations pointing in any direction on the issue. Paragraph 20 of Travelers’ verified complaint merely presents broadly stated claims in the alternative. Any reading of the assessment by Travelers presented to the Arbitration panel can lead to only one conclusion: Travelers is strongly on Long Bay’s side to prevail in the Arbitration. And Travelers, so shortly thereafter, cannot in this Court, on a good faith basis, take a wholly contradictory position in order to get some injunctive relief. Unlike the situations in United States Fidelity and Guaranty Co. v. Feibus, 15 F.Sup.2d 579, 585 (M.D.Pa. 1998), and Hartford Accident and Indemnity Co. v. Millis Roofing and Sheet Metal, Inc., 11 Mass.App.Ct. 645, 647(1981), or similar cases, there is no availability for Travelers to argue that MHFA’s position is valid. Travelers’ current position, in the face of its representations in the Arbitration, surely goes far beyond a mere lack of diligence or negligence, or even gross negligence. At this stage, in this proceeding, it is not Long Bay’s burden to prove Travelers’ bad faith but rather Travelers’ burden to show the contrary. It has not done so.
Additionally, the Court considers the asserted irreparable harm. Here we deal with money. Travelers says that the defendants — mostly two elderly men and the estate of their late brother who provided the effort to amass the assets in issue — are about to sell off their management contracts, their partnership interests and a large amount of real estate. Nothing, however, is said about what these defendants will do with the proceeds of those anticipated sales.[2] Nor is there any hint that the defendants, long-time residents of the Boston area, are about to flee the Commonwealth and will not be other than wholly responsible for their obligations under the Indemnity Agreement if, and when, any such obligations become due.
“Economic harm alone . . . will not suffice as irreparable harm unless ‘the loss threatens the very existence of the movant’s business.’ Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987).” Tri-Nel Management, Inc., supra, 433 Mass. at 227-28. Travelers’ very existence is not said to be at risk in this situation.
Consequently, this Court concludes that there is insufficient evidence of a likelihood of success on the merits or of irreparable harm to the plaintiff to justify the injunctive-type relief sought here.
ORDER
The request for preliminary injunctive relief is DENIED.

 The Court is not here ruling that Travelers, as a surety, is only entitled to recovery after actual liability under the Bond is established. All that now is under consideration is the amount at risk on an assessment of likelihood basis.

 An affidavit — thus far unopposed — from the defendants’ accountant attests to the fact that the sales of the management agreements and the partnership interests are arm’s-length transactions. The agreement therefor, also supplied, shows a sales price of $1,981,887. While there are no numbers proffered for the real estate sales, given the number of parcels — 39 are listed by street address in Paragraph 31 of the verified complaint — the amounts involved must be considerable.