Neel, Stephen E., J.
This case involves the interpretation of certain provisions of by-laws of a Massachusetts business trust that govern the nomination and election of its trustees. The plaintiff, Karpus Management, Inc. (Karpus) seeks declaratory and injunctive relief ordering defendant Putnam Municipal Opportunities Trust (PMO, or the fund) to recognize Karpus’s nomination of two trustees for positions reserved for election by preferred shareholders.[3] For the following reasons, Karpus’s motion for preliminary injunction will be denied.
BACKGROUND
PMO is a Massachusetts business trust and closed-end fund managed by Putnam Investments (Putnam). Organized under the terms of an agreement and declaration of trust dated April 1, 1993, PMO invests in securities and debt instruments.[4] Karpus, a New York corporation with a principal place of business in Pittsford, New York, is an institutional investor. Karpus owns 6,439,355 common shares of PMO, representing 15.02 percent of all outstanding common shares in the fund.[5]
*87 The fund is managed by a board of fourteen trustees, elected at the fund’s annual meetings. On September 12, 2008, the fund announced that the trustees had approved in principle a plan to merge the fund into an open-end fund also managed by Putnam. Putnam formally approved the merger plan in October 2008. The parties agree that subsequently, at the recommendation of Putnam, the trustees delayed the merger and, on June 26, 2009, declined to proceed with the merger with the open-end fund. No shareholder annual meeting having been scheduled for 2009, an annual meeting was scheduled for February 25, 2010.
Karpus, which supported the merger, anticipated a proxy contest on both the election of trustees and the issue of merging with the open-end fund. By letter dated December 16, 2009 and sent on December 23, 2009, Karpus gave notice to PMO of its intention to nominate eight nominees for election to the Board of Trustees “to contest the election of PMO Board members who had the longest tenure on the Fund’s Board . . .” (Notice).[6] The Notice also stated Karpus’s intention that the number of trustees be fixed permanently unless otherwise provided for by the shareholders. Finally, the Notice proposed that the following resolution be voted by shareholders at the annual meeting: “Resolved: The shareholders request the Board of Trustees to promptly consider converting the Fund from a closed-end fund format to an open-end fund format.’’
The fund responded by letter dated January 14, 2010, stating that, while Karpus’s shareholder proposal “was not received a reasonable time before the Fund was to begin printing and sending its proxy materials,” the fund had voluntarily included the Karpus proposal in the fund’s preliminary proxy statement filed that day with the SEC. The letter also states that Karpus’s designation of nominees to replace specific current trustees was “not possible” where the by-laws provided for election of trustees by plurality voting. The letter notes that the February 25, 2010, shareholder meeting had been rescheduled to April 8, 2010.
By separate correspondence, Karpus also requested a list of PMO’s shareholders. PMO responded by letter on December 31, 2009, that, under Rule 14a-7 of the Securities Exchange Act, the fund was not required to provide that list but could, and did, elect to mail soliciting materials to shareholders on behalf of Karpus.
Karpus repeatedly requested the shareholder list, citing the Massachusetts Business Corporation Act, G.L.c. 156D, which grants shareholders the right to access shareholder list information. The fund countered that, as a Massachusetts business trust, it was not subject to the provisions of c. 156D, and that in any event it was mailing soliciting materials on behalf of Karpus pursuant to Rule 14a-7 of the Securities Exchange Act of 1934. Eventually, Karpus filed an action to compel production of the shareholders list; on February 24, 2010, prior to a hearing on Karpus’s request, PMO produced the list.[7]
On March 2, 2010, PMO informed Karpus by letter of the fund’s position that, because Karpus was the holder of only common shares, and because the Notice “did not state any intention to nominate candidates for election solely by preferred shareholders,” the fund would treat the Notice “as pertaining solely to the nomination of eight candidates for election by the common and preferred shares of the Fund voting as a single class.”
The fund filed its preliminary proxy statement with the SEC on January 14, 2010, and its definitive proxy statement on January 26, 2010. Both include Karpus’s open-end conversion proposal, as well as Karpus’s plan to nominate trustees. Karpus’s definitive proxy statement, filed on March 8, 2010, specifically identifies Messrs. Goldstein and Cohen as proposed nominees for those two trustee positions to be elected by the holders of preferred shares.[8]
Karpus argues that it is entitled to a declaration that (1) with respect to the trustees nominated by Karpus to replace the two trustees to be elected by preferred shareholders, the preferred shareholders may vote on those nominations as a discrete and exclusive class; (2) Karpus is entitled to have its slate of six remaining nominees voted on by holders of common and preferred shares voting as a class; (3) Karpus is entitled to make nominations from the floor for any of its trustee nominees identified in the December 23, 2009, letter; and (4) the annual meeting scheduled for April 8, 2009, should be postponed for at least five weeks to allow Karpus to solicit shareholder support. Karpus now seeks an injunction requiring PMO to comply with the declaration to which Karpus says it is entitled.
DISCUSSION
In order to succeed on its motion for a preliminary injunction, Karpus bears the burden of proving “(1) a likelihood of success on the merits at trial; (2) that irreparable harm will result from the denial of the injunction; and (3) that the plaintiffs irreparable harm outweighs any harm the opposing party would suffer if the injunction were granted.” Tri-Nel Mgmt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001); Packaging Indus. Group Inc. v. Cheney, 380 Mass. 609, 617 (1980).
1. The Nomination of Trustees
The heart of the controversy before the Court is the parties’ decidedly different interpretations of the method by which the fund’s by-laws provide that trustees are to be nominated and elected. In particular, Article 12, Section 6 is entitled “Voting Rights” and provides, in relevant part:
*88 (a) [A]t any meeting of the shareholders of the Trust held for the election of Trustees, the holders of Preferred Shares . . . present in person or represented by proxy at said meeting, shall be entitled, as a class, to the exclusion of the holders of all other securities and classes of capital shares of the Trust, to elect two Trustees of the Trust . . . Subject to Paragraph 6(b) of this Part I of Section 12.1, the holders of outstanding Common Shares and Preferred Shares ... voting as a single class, shall elect the balance of the Trustees.
Paragraph 6(b) (“Right to Elect Majority of Trustees”) provides that, under specified conditions, holders of preferred shares are entitled to elect additional trustees:
(b). .. During any period in which any one or more of the conditions described below shall exist. .. the number of Trustees shall be automatically increased by the smallest number that, when added to the two Trustees elected by the holders of Preferred Shares ... would constitute a majority of the Trustees as so increased by such smallest number; and the holders of Preferred Shares . . . shall be entitled, voting as a class on a one-vote-per-share basis (to the exclusion of the holders of all other securities and classes of capital shares of the Trust) to elect such smallest number of additional Trustees, together with the two Trustees that such holders are in any event entitled to elect.
The by-laws were amended, effective March 9, 2001, to include new Article 13. Section 13.1, which provides for the advance notice of shareholder nominees for trustee and proposals to fix the number of trustees, reads in relevant part as follows:
13.1 . . . Only persons who are nominated in accordance with the following procedures shall be eligible for election as Trustees, and no proposal to fix the number of Trustees shall be brought before a meeting of shareholders or otherwise transacted unless in accordance with the following procedures, except as may be otherwise provided in the By-laws with respect to the right of holders of preferred shares, if any, of the Trust to nominate and elect a specified number of Trustees in certain circumstances.
(Emphasis added.) The section goes on to state:
(a) Meetings of Shareholders.
(1) Nominations of persons for election to the Board of Trustees and proposals to fix the number of trustees may be made at an annual meeting of share holders . . . only . . . (iii) by any shareholder of the Trust who was a shareholder of record at the time the notice provided for in this Section 13.1 is delivered to the Clerk of the Trust, who is entitled to vote at the meeting and who complies with the notice procedures set forth in subparagraph (2) of this paragraph (a) . . .
There is no dispute that two trustees are to be elected only by the holders of preferred shares under section 12, paragraph 6. Karpus, however, reads section 13.1 (a)(l)(iii) as allowing any shareholder of record — common or preferred — to nominate trustees for those positions, even if those trustees can be elected only by preferred shareholders. Karpus points out that the December 23, 2009 Notice specifically announced Karpus’s intent to replace trustees Patterson and Hill, who are those two trustees elected by holders of preferred shareholders. The fund argues that the notice provision of section 13.1, specifically the phrase “except as may be otherwise provided in the By-laws with respect to the right of holders of preferred shares, if any, of the Trust to nominate and elect a specified number of Trustees in certain circumstances,” refers back to section 12(6)(a), which prohibits any holders other than those of preferred shares from voting for two designated trustees. Although 12(6)(a) does not include a nomination provision, the fund argues that the quoted part of section 13.1 inextricably ties the nomination of those two trustees to their election, and precludes holders of common shares from nominating for those positions.
The by-laws of an entity govern the manner in which it does business and “define the duties and powers of stockholders and directors with reference to each other and the corporation.” ER Holdings, Inc. v. Norton Co., 735 F.Sup. 1094, 1097 (D.Mass. 1990). Because by-laws are m essence contracts between shareholders and directors, principles of contract interpretation apply, and they “must be read as a whole so that, if possible, provisions are harmonized with one another.” Id. at 1098. See also Spartans Indus. v. Pilling Shoe Co., 385 F.2d 495, 499 (1st Cir.1967) (harmonizing construction preferred even if certain language, viewed alone, more readily suggest different meaning); J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986) (contract should be considered as harmonious means for effectuating intent of the parties with reasonable effect given to each provision).
In the present case, it is important to note that Section 13.1, by its terms, sets out “procedures” by which trustees are nominated. The question in issue here is whether it prescribes as well the rights of holders of particular classes of shares to nominate trustees. Read together with the other pertinent bylaw provisions quoted above, the Court concludes that it does not.
The Court reaches that conclusion in light of the savings clause in Section 13.1, which qualifies the general provision (“[o]nly persons who are nominated in accordance with the following procedures shall be eligible for election . . .”) by adding the following: ." . . except as may be otherwise provided in the By-laws with respect to the right of holders of preferred shares ... to nominate and elect a specified number of Trustees in certain circumstances." Even if that clause *89 refers only to Article 12, section 6(b), there is no reasoned basis upon which to conclude that the exclusive rights of preferred shareholders to “nominate and elect” trustees apply only in the circumstances described in that section. Putting it another way, if the preferred shareholders are, under the conditions specified in section 6(b), allowed to nominate and elect a majority of trustees to protect their interests as preferred shareholders, it would make no sense to deny them the protection of an exclusive right to nominate and elect the minimum of two trustees to which (as section 6(b) expressly acknowledges) they are always entitled under 6(a).[9]
For the above reasons, the Court concludes that plaintiff has not demonstrated a likelihood of success on the merits of its claim for a declaration that it has the right to nominate candidates for election by a class of shares that it does not own, and as to which it is ineligible to vote.[10] Furthermore, Karpus has failed to demonstrate that it will sustain irreparable harm should it not be permitted to nominate its candidates for the two designated slots. The fund has stated that all Karpus’s nominees will be proffered as candidates for election by the common and preferred shareholders, voting as a single class. Karpus thus will not be disenfranchised. Moreover, a ruling in Karpus’s favor would threaten the exclusive rights and implied protections of preferred shareholders where Karpus — which the parties agree was a holder only of common shares as of the record date — could nevertheless advance candidates for whom it is not entitled to vote.
2.The Shareholders List
Karpus argues that PMO’s delay in providing the list allowed PMO to solicit support from shareholders while Karpus’s hands were tied. The question of whether Karpus is entitled to the list pursuant to G.L.c. 156D, §7.20[11] is moot where PMO has now provided the list. Karpus nevertheless argues that it is prejudiced unless the Court postpones the April 8, 2009 annual meeting to allow Karpus the opportunity to, in effect, “catch up” in the proxy solicitation contest. The fund responds that any delay in soliciting proxies is attributable to Karpus, not the fund.
The Court notes that there was an approximately six-week window between January 14, 2010, the date PMO filed its preliminary proxy statement, and February 24, 2010, when Karpus did the same. Karpus has presented no adequate explanation as to why it did not file sooner. Regardless of the availability of the shareholders list, Karpus could not have begun soliciting proxies prior to filing its preliminary statement.[12] Any prejudice therefore is the result of Karpus’s own conduct. Accordingly, the Court declines to order that the April 8, 2010 annual meeting be adjourned to a later date.
3.Nominations from the Floor
Karpus requests that the Court declare that it is entitled to make nominations from the floor at the annual meeting. Karpus presumably seeks to do so as a recent acquirer of preferred shares. The Court finds neither in the papers submitted, nor the by-laws, support for Karpus’s position, but declines to rule on the issue because the parties have not addressed it in substance.
4.Tabulation of Votes
Karpus has submitted an affidavit attaching what Karpus asserts are proxy ballots containing certain “inconsistencies and mistakes” which, Karpus states, may result in an incorrect tabulation of votes. The fund responds that the attached documents are not ballots, but rather voting instructions sent by Financial Solutions, Inc. (Broadridge), a third-party administrator, which facilitates the submission to the fund of a single proxy ballot by certain record holders. The fund maintains that it has worked with Broadridge to ensure that the voting instructions are complete and accurate. The Court concludes that the dispute does not merit equitable relief in Karpus’s favor.
ORDER
For the foregoing reasons, the Court concludes that Karpus has not demonstrated a sufficient likelihood of success on the merits of its claim, nor irreparable harm if equitable relief is not granted. Accordingly, Karpus’s motion for preliminary injunction is DENIED.

 The complaint asserts claims for declaratory judgment pursuant to G.L.c. 231A, §1 et seq. (Count I) and injunctive relief (Count II).

 Although the Agreement and Declaration of Trust does not cite any Massachusetts statute under which the trust is organized, Massachusetts business trusts are governed by G.L.c. 182, §1 et seq. A business trust is “an unincorporated business organization created by an instrument by which property is to be held and managed by trustees for the benefit and profit of such persons as may be or become the holders of transferable certificates evidencing the beneficial interests in the trust estate.” 88 A.L.R.3d 704, §2.

 At the hearing before the Court on March 23, 2010, Karpus represented that it had recently acquired a certain number of preferred shares as well.

 The Notice specifically lists Messrs. Patterson, Putnam, Hill, Joskow, Stephens and Curtis, and Ms. Kennan and Ms. Baxter, as the trustees Karpus is seeking to replace. Patterson and Hill are those trustees elected by holders of preferred shares. The Notice also lists the Karpus nominees as Messrs. Baer, Chapman, Cohen, Goldstein, Hoyt, Lessard, Orvieto, and Regan. The Notice does not specify which two proposed nominees were to replace Patterson and Hill.

 The fund has not conceded that it was required to provide the shareholders list pursuant to G.L.c. 156D.

 Karpus’s first version of its preliminary proxy statement, filed on February 24, 2010, omits this information.

 The Court’s conclusion comports with the general principle that nominating and voting are both part of an election. See, e.g., Harrah’s Entertainment, Inc. v. JCC Holding Co., 802 A.2d 294, 310-11 (Del.Ch. 2002) (“the right to participate in the voting process includes the right to nominate ... To allow for voting while maintaining a closed selection process thus renders the former an empty exercise”).

 In light of the Court’s conclusions, the Court need not address the fund’s argument that the December 23, 2009, notice was deficient in other respects.

 G.L.c. 156D, §7.20 provides, in relevant part that ”[t]he shareholders list shall be available for inspection by any shareholder, beginning 2 business days after notice is given of the meeting for which the list was prepared and continuing through the meeting . . .”

 Rule 14a-3 of the Securities Exchange Act of 1934 provides that
No solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with:
A publicly-filed preliminary or definitive proxy statement, in the form and manner described in Rule 240.14a-16, containing the information specified in Schedule 14A;
A preliminary or definitive written proxy statement included in a registration statement filed under the Securities Act of 1933 on Form S-4 or F-4 or Form N-14 and containing the information specified in such Form; or
A publicly-filed preliminary or definitive proxy statement, not in the form and manner described in Rule 240.14a-16, containing the information specified in Schedule 14A (Rule 240.14a-101).