McIntyre, Frances A., J.
There are many complex issues presented by the occupation of Dewey Square by the named plaintiffs and the association of persons describing themselves as Occupy Boston.[1] Before the court is the plaintiffs’ Motion for a Temporary Restraining Order. With this motion was the plaintiffs’ complaint, in which they claimed a declaratory judgment that their occupation of Dewey Square is protected as free speech and that they are entitled to continue to peacefully occupy Dewey Square. As such, it is a preliminary and partial consideration of these issues without the taking of evidence. For the following reasons, the plaintiffs’ Motion for a Temporary Restraining Order is ALLOWED IN PART.
BACKGROUND
This proceeding arises out of the demonstrations known as Occupy Boston, occurring in Dewey Square in the heart of Boston’s financial district. It is undisputed that since its inception on September 30, 2011, Occupy Boston participants began occupying Dewey Square on a twenty-four-hour basis. Occupy Boston claims to have brought attention to the increasing disparity of wealth and power in the United States. The participants claim that, through their occupation of Dewey Square, they seek to “take back the city” and demonstrate their vision of a more just and economically egalitarian society.
The plaintiffs have brought this special proceeding for a temporary restraining order and a preliminary injunction. The City of Boston and Boston Police Department claim to have no plan to remove the participants. Consequently, they argue that there is no case or controversy here, and the matter is not yet ripe for a declaration.[2]
DISCUSSION
In order for the plaintiffs to succeed on their motion, they must “show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs’ likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction.” Tri-Nel Mgmt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001). See also Packaging Indus. Group v. Cheney, 380 Mass. 609, 617 n.12 (“Since the goal is to minimize the risk of irreparable harm, if the moving parly can demonstrate both that the requested relief is necessary to prevent irreparable harm to it and that granting the injunction poses no substantial risk of such harm to the opposing party, a substantial possibility of success on the merits warrants issuing the injunction”). “When, as here, a party seeks to enjoin governmental action, the court also considers whether the relief sought will adversely affect the public.” Tri-Nel Mgmt., Inc., 433 Mass. at 219, citing Commonwealth v. Massachusetts CRINC, 392 Mass. 79, 89 (1984).
A. Likelihood of Success on the Merits
The court must first examine whether the plaintiffs have demonstrated their likelihood of success on the merits. The plaintiffs seek a declaratory judgment that the peaceful occupation of Dewy Square Park is protected under the First Amendment and article XVI of the Massachusetts Declaration of Rights. Thus, the plaintiffs must establish that they are likely to succeed on the merits of their claim that the occupation of Dewey Square on a twenty-four-hour basis is a protected form of speech.
Unlike the circumstances involving Zuccotti Park in New York and Occupy Wall Street, it is undisputed that Dewey Square is a traditional public forum. Relevant here is that federal courts have established that twenty-hour protests in public parks and other public forums are expressive conduct and therefore require First Amendment protection. See University of Utah Students Against Apartheid, 649 F.Sup. at 1205-07 (“shanties” erected on college campus to protest apartheid was symbolic expression protected under First Amendment); United States v. Abney, 584 F.2d 984, 985-86 (D.C.Cir. 1976) (sleeping in park was sufficiently expressive in nature to implicate First Amendment protections).
It is axiomatic that the plaintiffs have a constitutional right to express their views and ideas through “pure speech.” Cohen v. California, 403 U.S. 15, 25-26 (1971); see also Caswell v. Licensing Com’n of Brockton, 387 Mass. 864, 868 (1983). “Ithas long been *338 clear that ‘speech’ within the meaning of the First Amendments guarantee of ‘freedom of speech’ includes more than mere verbal or written communication.” University of Utah Students Against Apartheid v. Peterson, 649 F.Sup. 1200, 1207 (D.Utah 1986).
In this case, the plaintiffs allege that their occupation of Dewey Square for twenty-four hours a day is not pure speech but protected symbolic expression. In their affidavits, the named plaintiffs claim that their message can only be effectively communicated through the literal occupation of Boston in the financial district. In the affidavits filed, they aver that their occupation symbolically communicates that “as corporations have occupied our government, the Occupy Boston movement will occupy Boston.”
In Spence v. Washington, 418 U.S. 405, 409-11 (1974), the United States Supreme Court articulated two aspects of symbolic expression to determine whether it is protected speech. The first factor focuses on the actor, and looks to whether there was an intent to convey a particularized message. Id. The second factor looks to whether there is a substantial likelihood that the message will be understood by those who view it. Id.
Here, applying the first of the Spence factors, the named plaintiffs have shown by affidavit that they intend to convey a particularized message. Each endorses in filed affidavits this message: “a more just, democratic, and economically egalitarian society, responsive to people rather than corporations, is possible.”
The second Spence factor is more troubling. Is there a substantial likelihood that this message will be understood from those who see the occupation of Dewey Square? This Court does not opine at this juncture whether the chosen symbolism of the plaintiffs has been so understood by their viewers. It is this question which requires further deliberation and resolution after briefing and hearing.
But for the purposes of a temporary restraining order, this court finds that the plaintiffs have met their burden by showing a substantial possibility that their occupation of Dewey Square deserves protection. Thus, the plaintiffs have made a sufficient showing of their likelihood of success to further consider temporary relief.
B.The Irreparable Harm
The court must next examine the irreparable harm to the plaintiffs if their motion is denied. In Elrod v. Burns, the United States Supreme Court held that “(t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.” 427 U.S. 347, 373 (1976). Obviously, a removal action against the occupation would infringe whatever First Amendment rights are vested in these plaintiffs. Given the Supreme Court’s strong language in Elrod concerning the loss of First Amendment rights, the court finds that the plaintiffs have clearly met their burden of establishing that abridgement of their First Amendment Rights would constitute irreparable harm. Notwithstanding the defendants’ claims that they have no plans to remove the plaintiffs and the other protesters, the risk of abridgement of those rights before an adjudication is considered to be significant.
C.Risk of Harm to the Opposing Party
The court must now weigh the likelihood of the plaintiffs’ success and the irreparable harm to the plaintiffs against the potential harm to the defendants. The City and the Boston Police Department represent to this court that they have no present plans to remove the protestors. There is no reason to assume that the plaintiffs would be permitted to continue their occupation into infinitude. The status quo could change at any moment, without notice to the court or plaintiffs. The defendants were unwilling to assure this court that no removal action would be undertaken before this judge had the opportunity to rule on the plaintiffs’ claims.
The defendants argue that, if there is advance notice of any police action to remove the Occupy Boston protesters, police and protesters may be endangered. The City and the Department fear that the protesters will call for and mobilize other protestors to resist police efforts to take down the site. They fear injury to protesters and police. The court recognizes the legitimate concern of the defendants but that concern, at this juncture, is not factually based. Reactions in other locations are not predictive of Occupy Boston, which by all accounts, has been a distinct and peaceable event. The fears are speculative and somewhat conjectural.
The defendants also point to the locked arms and human barricade created at Occupy Boston on October 10, 2011, when the second encampment was removed as reason why they must remain unfettered.
However, the circumstances are different today. The matter was not before any court on October 10, 2011, but intervention has now been sought. The Occupy Boston protesters chose to resolve this matter according to the rule of law by bringing this matter before the court. This court is prepared to presume that it would be Occupy Boston’s intention to abide by the lawful orders of the court.
The defendants have repeatedly stated they have no plan to remove the protesters at Dewey Square. This court sees no irreparable harm to the defendants in maintaining that status for ten days. Thus, the court finds that the granting of a temporary restraining order poses no substantial risk of harm to the defendants.
D.Effect on the Public
Lastly, “as the plaintiffs seek to enjoin governmental action, the court must also consider whether the *339 relief sought will adversely affect the public.” Tri-Nel Mgmt., Inc., 433 Mass. at 219, citing Massachusetts CRINC, 392 Mass. at 89.
This court apprehends that the authorities wish to retain the element of surprise in the event of a removal action for the reasons stated above. Surprise in a militaiy operation is an advantage but it brings with it other elements with a civilian population. Surprise may invoke panic, flight, and violent resistance. This court believes that an orderly dispersal of Occupy Boston participants can reasonably be anticipated if it is preceded by a lawful court order. The public interest may well be thus advanced.
Moreover, it appears that the plaintiffs and the other participants of Occupy Boston have been nonviolent and worked cooperatively with the City of Boston and the Boston Police Department thus far. It is reported that the medical and food tents at Dewey Square passed inspection by the City of Boston Health Inspectors on October 26, 2011. Additionally, the plaintiffs and the other participants have worked with the Boston Fire Marshal to ensure that the structure of the occupation meets lire regulations. At this stage in the proceedings, given the peaceful nature of the plaintiffs and the other participants thus far, the court finds that granting the temporary restraining order would not adversely affect the public.
CONCLUSION AND ORDER
As the court finds that the plaintiffs have demonstrated a sufficient showing of likelihood of success on the merits, that loss of First Amendment freedoms constitutes irreparable injury, that granting a temporary restraining order poses no substantial risk of harm to the defendants nor would it adversely affect the public, the issuance of a temporary restraining order in this case is warranted. Therefore, after oral argument and consideration of the pleadings and the law, the court ALLOWS the Motion for a Temporary Restraining Order INPARTbut it is otherwise DENIED.
The City of Boston and the City of Boston Police Department are ORDERED to refrain from any police action which would remove the individuals, tents, and personal belonging of the Occupy Boston protesters from Dewey Square, absent emergency circumstances including but not limited to medical circumstances, fire, or outbreak of violence, at any time before this court has decided the motion for a preliminary injunction brought by these plaintiffs. Alternatively, the City may seek an order from this court authorizing the removal of the Occupy Boston protesters on any earlier date. The parties are ORDERED to participate in mediation before December 1, 2011.
This case is set for a hearing on the preliminary injunction on December 1, 2011 at 9:00 A.M.

There is a substantial question as to whether Occupy Boston is a proper party before the court. It is a well established principle that an unincorporated association cannot be a party to litigation. Save the Bay, Inc. v. Dept. of Pub. Utilities, 366 Mass. 667, 675 (1975). However, the defendants do not raise this objection, there are named plaintiffs who do have standing, and the practicalities of the situation persuade this court that this question should be deferred to the next hearing.

The court is mindful that declaratory relief is unavailable where no actual controversy exists. Gay and Lesbian Advocates & Defenders v. Attorney General, 436 Mass. 132, 134 (2002). But in this case, a controversy will not be joined until the plaintiffs’ First Amendment rights are abridged, thereby mooting consideration of plaintiffs’ claim to protection.
An actual controversy may be found whether or not a plaintiffs rights have actually been impaired. District Attorney for the Suffolk District v. Watson, 381 Mass. 648, 659 (1980). This court concludes that the circumstances attending this dispute plainly indicate that the potentially antagonistic claims of these parties will immediately and inevitably lead to litigation. Hence, this court concludes that declaratory relief is appropriate.