THOMAS M. DiCICCO & others[1] *vs.* DEPARTMENT OF
ENVIRONMENTAL PROTECTION & others.[2]

No. 04-P-1095.

Suffolk. May 11, 2005. - September 2, 2005.

Present: GELINAS, CYPHER, & TRAINOR, JJ.

*Department of Environmental Protection. Wetlands Protection Act. Administrative Law,* Agency's authority, Judicial review. *Statute,* Construction.

The Department of Environmental Protection properly exercised its discretion under the Wetlands Protection Act, G. L. c. 131, § 40, in fashioning an administrative consent order as a remedy for a town's previous illegal filling of wetlands. [425-428]

CIVIL ACTION commenced in the Superior Court Department on January 6, 2003.

The case was heard by *Janet L. Sanders,* J., on a motion for judgment on the pleadings.

*Richard A. Nylen, Jr.,* for the plaintiffs.

*Matthew C. Ireland,* Assistant Attorney General, for Department of Environmental Protection & others.

*Thomas Paul Gorman* for town of Westwood & others.

CYPHER, J. The plaintiffs, eleven residents of Westwood, filed a complaint in Superior Court on January 6, 2003, objecting to an administrative consent order entered into between the Department of Environmental Protection (DEP) and the town of Westwood (Westwood). The consent order requires Westwood to effect about 24,000 square feet of wetland restoration and replication, as compensation for the previous illegal filling of

---

[1]Ten named residents of Westwood.

[2]The commissioner of the Department of Environmental Protection (DEP), a regional environmental engineer of the northeast division of the DEP, the town of Westwood, the Westwood Board of Selectmen, the Westwood School Committee, and the Westwood Conservation Commission.

protected wetlands during construction of a middle school and related facilities.

A Superior Court judge, ruling that the DEP has discretion under its statutory enforcement authority, G. L. c. 131, § 40, to fashion such a remedial order and that judicial intrusion was not warranted in these circumstances, denied the plaintiffs' motion for judgment on the pleadings and ordered that the complaint be dismissed.

*Procedural background.* Westwood filed a request for a determination of applicability of the Massachusetts Wetlands Protection Act (WPA) and Westwood's wetlands protection bylaw with the Westwood Conservation Commission (commission) in February, 2001. The request proposed work involving renovations to the existing Westwood High School; construction of parking areas, ballfields, and a running track; and installation of utilities and drainage improvements on the approximately thirty-three acre project site.[3] There was to be some disturbance within a one hundred foot wetland buffer zone and the river-front buffer area. The commission issued a determination of applicability, essentially stating that the proposed work area is within the buffer zones and therefore subject to protection under the WPA and Westwood's wetlands protection bylaw, and that any "removing, filling, dredging, or altering of that area requires the filing of a Notice of Intent." Claiming that Westwood's request did not identify wetlands previously filled without prior approval, the plaintiffs filed an appeal with the DEP.

After acknowledging that there had been unauthorized filling,[4] Westwood withdrew its request and filed a notice of intent with the commission in April, 2001. The commission issued an order in May, 2001, approving the proposed project subject to special conditions, the most significant of which states that no work shall be allowed until Westwood "[h]as revised plans showing either restoration in place or creation of compensatory

---

[3]The project site was described as adjacent to "bordering vegetated wetlands associated with Lyman Pond, an unnamed perennial stream, and Town of Westwood Conservation Land." The request stated that the proposed work would not disturb these resource areas.

[4]Nowhere in the record is there any indication of either when, or under what circumstances, the wetlands were filled. In their brief, the plaintiffs allege that the wetlands were filled during the past two to ten years.

wetland for wetlands previously filled . . . [as well as] restoration or creation of a ten foot buffer." The plaintiffs appealed that order to the DEP, and to the Superior Court.[5]

After investigation, the DEP determined that approximately 10,800 square feet of bordering vegetated wetlands as well as approximately 11,100 square feet of restricted wetlands[6] had been illegally filled during previous construction of a playing field. In December, 2001, the DEP notified the plaintiffs that it had reviewed Westwood's revised plans for restoration and replication of approximately 24,000 square feet of wetlands, had determined that the plans complied with the WPA and that the project should be allowed, and was issuing a superseding order of conditions. The plaintiffs appealed to the DEP, requesting an adjudicatory hearing. Based on Westwood's admission to the unauthorized filling and its waiving of an adjudicatory hearing, the DEP issued in December, 2002, an administrative consent order and notice of noncompliance, which affirmed that Westwood violated the WPA and wetlands regulations and approved Westwood's wetlands replication plan and schedule. Questioning the DEP's authority to issue such an administrative consent order, the plaintiffs now ask essentially that Westwood be ordered to restore the filled wetlands and that financial sanctions be applied for the illegal filling.

*Discussion.* In understanding the WPA, "[i]t is significant that [the WPA] is entirely 'procedural' in that it [only] prescribes the steps to be taken before any dredging or landfill activities may be conducted in certain wetland areas." *Citizens for Responsible Envtl. Mgmt.* v. *Attleboro Mall, Inc.,* 400 Mass.

[5]The plaintiffs indicate that their appeal to the Superior Court is based on Westwood's wetlands protection bylaw, and that it is pending. Nothing further on that appeal appears in our record.

[6]Restricted wetlands are specially designated by the DEP pursuant to G. L. c. 131, § 40A, and those orders of restriction are recorded in the appropriate registry of deeds. Such an order was recorded in 1974 for various wetlands in Westwood, one of which was owned by the town, and is in issue in the present case.

No meaningful argument is made that the wetlands listed in the recorded 1974 order should be treated differently than other affected wetlands in this case. Also, the parties have not argued the effect, if any, of the unauthorized filling or the administrative consent order on the recorded 1974 order, and we make no suggestion whether the recorded 1974 order should be revised.

658, 669 (1987), quoting from *Boston* v. *Massachusetts Port Authy.*, 364 Mass. 639, 647-648 n.10 (1974). "The Act 'does not lay down absolute use prohibitions.' *Coons* v. *Carstensen*, 15 Mass. App. Ct. 431, 435 (1983). It vests in [DEP] precisely that 'broad authority to effectuate [its] purposes' which commands judicial deference. *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 524 (1979)." *Citizens for Responsible Envtl. Mgmt.* v. *Attleboro Mall, Inc.*, *supra.*

General Laws c. 131, § 40, first par., as amended through St. 1974, c. 818, § 1, provides, in part, that "[n]o person shall remove, fill, dredge or alter any . . . wetland . . . without filing written notice." Where work is proposed in an area protected by the WPA, and after a public process that need not be repeated here, a local conservation commission shall "impose such conditions as will contribute to the protection of the interests described [in the statute]." G. L. c. 131, § 40, eighteenth par., as appearing in St. 1974, c. 818, § 1. If such an order imposing conditions is appealed, the DEP is granted authority to issue a superseding order. See G. L. c. 131, § 40, nineteenth par. When the unauthorized filling was brought to its attention, the DEP was presented with the question of what appropriate action should be taken for a past violation of the statute. General Laws c. 131, § 40, thirty-first par., inserted by St. 1990, c. 388, § 1, provides that the DEP "may issue enforcement orders directing compliance with this section and may undertake any other enforcement action authorized by law," as well as order a violator "to restore property to its original condition and take other actions deemed necessary to remedy such violations."

We agree with the Superior Court judge that the statute does not mandate "restoration of the property to its original condition."[7] Accordingly, there is no merit in the plaintiffs' assertion that the DEP was without authority to allow the unauthorized

---

[7]The judge put aside issues of subject matter jurisdiction and standing, raised by the defendants, and took up the merits of the case. We similarly do not address these arguments of the defendants, particularly because G. L. c. 214, § 7A, inserted by St. 1973, c. 1114, § 62 (§ 10A was deleted in 1973, and its text was inserted here), grants standing to "not less than ten persons domiciled within the commonwealth" to bring a civil action in Superior Court regarding a claim of "damage to the environment" based on a violation of a statute, bylaw, or regulation.

fill to remain in place. In the circumstances, and for the reasons that follow, we think the order of the DEP (agreed to by Westwood), that the filled wetlands be replicated, constitutes an appropriate remedy to be applied in this case, rather than ordering removal of the fill.[8] While the record does not indicate the nature of the wetlands before filling, or the extent of the construction over the filling, there is no indication that the replication of plant communities and wildlife habitats in a proximate location will not constitute an adequate restoration of the lost wetlands.[9] Moreover, there is no showing that ordering the removal of the construction and the unauthorized fill would accomplish a more complete or better result.[10]

" 'We give substantial deference to the construction placed on a statute . . . by the agency charged with its administration,' *Manning* v. *Boston Redevelopment Auth.*, [400 Mass.] 444, 453 (1987); and deference is especially appropriate where the Legislature 'has seen fit to delegate broad rulemaking authority to the [agency].' *Natural Resources Defense Council, Inc.* v. *SEC*, 606 F.2d 1031, 1050 (D.C. Cir. 1979)." *Citizens for Responsible Envtl. Mgmt.* v. *Attleboro Mall, Inc.*, 400 Mass. at 668-669. As the Superior Court judge properly observed, judicial intrusion into agency discretion in enforcement matters is

[8]Pursuant to 310 Code Mass. Regs. § 10.55(4)(b) (1997), the DEP is authorized to permit replacement of lost wetlands under conditions deemed "necessary to ensure that the replacement area will function in a manner similar to the area that will be lost." Although that regulation appears to limit the area to be lost to 5,000 square feet, we think it should not restrict the DEP in this case from permitting replication, as opposed to removal, of the unauthorized fill.

[9]The administrative consent order requires Westwood to replicate 24,000 square feet of wetlands at the school project site according to specified drawings. The order outlines requirements for plantings, professional supervision and monitoring, a schedule, and penalties for any violations of the order.

Also, in these circumstances, we think no financial sanctions, pursuant to G. L. c. 140, §§ 40 and 40A, were justified. Westwood has not failed to comply with the DEP's administrative consent order, and in any event, that order contains sanctions for future noncompliance.

[10]We discern nothing in the dictionary definitions of the words "restore" or "replication" suggesting that the restoration must take place only in the filled area. Definitions of restore include "to bring back to or put back into a former or original state" or "renew." Webster's Third New Intl. Dictionary 1936 (2002). Replication is defined as "copy" or "the act or action of reproducing." *Id.* at 1925.

particularly inappropriate. See *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985) (an agency's decision concerning enforcement generally is committed to its "absolute discretion" and recognition of that discretion is attributable to the "unsuitability for judicial review" of such decisions). See also *Commonwealth* v. *Boston Edison Co.*, 444 Mass. 324, 334 (2005) ("the proper exercise of enforcement discretion . . . is not ordinarily judicially reviewable").

General Laws c. 131, § 40, thirty-first par., provides neither a mandatory nor a definite standard for enforcement actions — only that a violator *"may* be required to restore the property to its original condition" (emphasis added). In any event, the scope and nature of restoration and replication are considerations within the discretion of the DEP. "Although the protected interests are stated with some specificity, . . . the statute is silent with respect to what may or may not constitute 'protection.' " *Citizens for Responsible Envtl. Mgmt.* v. *Attleboro Mall, Inc.*, 400 Mass. at 669. "We note also that [DEP] has expertise, not only with respect to what conditions will protect the statutory interests in a given case but also with respect to what adjudicatory techniques will be administratively feasible in service of those interests." *Id.* at 671.

*Conclusion.* For the principal reason that the DEP properly exercised its discretion in fashioning the administrative consent order as a remedy for the previous illegal filling of wetlands, and for the further reasons stated above, we conclude that the Superior Court judge properly dismissed the plaintiffs' complaint.

*Judgment affirmed.*