Ricciardone, David, J.
INTRODUCTION
This matter came before the court for hearing on the motion of the defendants, plaintiffs-in-counterclaim, to enjoin the plaintiff from altering the dam on its adjoining property in the manner it has for the past two years causing flooding of the defendants’ land. For reasons discussed below, the motion is ALLOWED.
DISCUSSION
To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction. Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2000), citing Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980).
After hearing and review of the record of this matter, the following facts are established: The plaintiff acquired the property next to the defendants in 2009 by deed that specifically references “the privilege of flowing . . . Burdon Pond to high water mark caused by a 10" flash board on waste way flume.” (Plaintiffs Exhibit A.) The plaintiff thereafter installed dashboards upon the dam in question causing significant flooding and damage to the defendants’ land.[1] (Defendants’ Exhibit E.) The plaintiff now claims authority to do so pursuant to the deed.[2] In its two-year battle with the Massachusetts Department of Environmental Protection (DEP) the plaintiff also claimed an exemption to environmental wetlands regulations prohibiting such activity; the DEP roundly rejected this position as entirely without merit and concluded that the plaintiffs unauthorized work on the dam was illegal. (Defendants’ Exhibit I.) The DEP ordered the plaintiff to dismantle its alteration of the dam. (Id.) According to counsel, that administrative decision awaits reconsideration within the agency and a 30A appeal to this court.
Likewise, the plaintiff has had a contentious history with the Massachusetts Department of Conservation and Recreation’s Office of Dam Safely (ODS) which issued orders to hire a professional engineer to provide an inspection report of the dam as required by G.L.c. 253, §§44-48. (Defendants’ Exhibits A-D.) These orders, like those of the DEP, went unheeded. The damage to the defendants’ land continues according to Mr. Vandenakker who briefly testified at the hearing.
The decisions of such administrative offices with specialized expertise in the area of dam safety and wetlands rightly are to be accorded substantial deference by the courts, especially in enforcement matters. DiCicco v. Dept. of Environmental Protection, 64 Mass.App.Ct. 423, 427-28 (2005). Both agencies here have spent a substantial amount of time and resources in the investigation and consideration of this matter. Suffice it to say that this court is convinced that the plaintiffs-in-counterclaim have a likelihood of success on the merits of their counterclaim.
As to irreparable harm, this court is not persuaded that any monetary damages that may be awarded here will be sufficient to address the losses sustained by the flooding of the defendants’ land. The continuous nature of the flooding here is causing large trees to die, cultivation to be curtailed, and land to be rendered unusable. This is analogous to a taking. This situation was addressed by the Supreme Judicial Court in Chesarone v. Pinewood Builders, Inc., 345 Mass. 236, 240-41 (1962):
Without the pretext of an easement or other legal right, Pinewood has artificially collected, channeled, and discharged its surface waters onto the plaintiff s land. Such action constitutes a continuing trespass ... An intentional and continuing trespass to real estate may be enjoined . . . Damages are usually inadequate because the plaintiff is not to be compelled to part with his property for a sum of money. “The principal reason for this is that which lies at the foundation of the jurisdiction for decreeing specific performance of contracts for the sale of real estate. A particular piece of real estate cannot be replaced by any sum of money, however large; and one who wants a particular estate for a specific use, if deprived of his rights, cannot be said to receive an exact equivalent or complete indemnity by the payment of a sum of money” ... To determine that an injunction is unavailable is to enable the encroaching party to take rights in really *568 from the owner at a valuation. This is a power properly limited to eminent domain proceedings.
Id. (internal citations omitted). The plaintiffs-in-counterclaim have shown irreparable harm.
Finally, with regard to a balancing of the equities, the consequences of plaintiffs actions as to the defendants are serious and substantial, while the effect of an injunction upon the plaintiff requires only sequential removal of the dam’s dashboards. This simple operation will restore the status quo to the time just before the plaintiff took possession of its property and changed the shoreline and depth of Burdon Pond.
ORDER
For the reasons stated, the plaintiffs-in-counterclaim have shown sufficient grounds for equitable relief, and the motion for a preliminary injunction is ALLOWED.
PRELIMINARY INJUNCTION
The plaintiff is hereby ordered immediately to open the gate valve on the subject dam to lower the level of Burdon Pond, to remove the top flash board on the dam spillway, and to keep the gate valve open until the water level of the pond is equal to the height of the concrete spillway. As the remaining flash boards are exposed by the lowering water level, the plaintiff will then completely remove each flash board from the dam spillway within ten (10) calendar days of this order. Upon removal of the final flash board, the plaintiff will close the gate valve on the dam and maintain the water level at the top of the concrete spillway.
The plaintiff will then take no further action to flood or otherwise damage the property of the defendants, nor will he take any action not in compliance with the Mass. Wetlands Protection Act and Wetlands Regulations, nor shall he direct or allow others to do; all until such further action of the court.

As this court noted at the hearing of this matter, the photographs showing the area of flooding, the land so destroyed, the dying trees, and flooded com crops, were compelling.

This court has not dwelt on the dubious proposition that in today’s society a right of trespass can be granted by deed, since the plaintiff placed flashboards the height of which is almost double that stated in the deed.
Additionally, such deed language may well harken back to a time when the right to alter water levels was granted for the purpose of operating mills; such use was “deemed to be a freehold determinable upon the cessation of the mills,” Dryden v. Jepherson, 35 Mass. 385, 392 (1836). Even in the mill period, however, the grant of such water rights was limited to “any useful and beneficial purpose, . . . subject only to this limitation, that he does not thereby injuriously affect the common and equal rights of other proprietors of lands above or below his own, on the same stream.” Bardwell v. Ames, 39 Mass. 333, 354 (1839). It is all the more unsound to attempt to justify such injurious use in modem times.