Tucker, Richard T., J.
This matter came on for an evidentiary hearing upon the defendants’ complaint for civil contempt. At issue is whether the plaintiff has complied with an order of this court dated April 17, 2012 (Ricciardone, J.) [29 Mass. L. Rptr. 567). This order stated:

The plaintiff is hereby ordered immediately to open the gate valve on the subject dam to lower the level of Burdon Pond, to remove the top flash board on the dam spillway, and to keep the gate valve open until the water level of the pond is equal to the height of the concrete spillway. As the remaining flash boards are exposed by the lowering water level, the plaintiff 
*234
will then completely remove each flash board from the dam spillway within ten (10) calendar days of this order. Upon removal of the final flash board, the plaintiff will close the gate valve on the dam and maintain the water level at the top of the concrete spillway.

The plaintiff will then take no further action to flood or otherwise damage the property of the defendants, nor will he take any action not in compliance with the Mass. Wetlands Protection Act and Wetlands Regulations, nor shall he direct or allow others to do; all until suchfurther action of the court.

(Emphasis original.)
Additionally, the complaint for contempt alleges that plaintiff has violated Judge Ricciardone’s subsequent “Interim Order on Complaint for Contempt” dated June 8, 2012. This interim order stated:
The hearing on the defendants’ /plaintiffs’-in-counterclaim complaint for contempt is suspended. The suspension is based on Mr. Fease’s assurance, under oath, that he understands the requirements of the pr eliminaiy inj unction of4/17/12 and agrees to comply therewith immediately. The court finds that the order is clear and unequivocal; therefore, any future violation thereof will be dealt with severely.
In complying with the order, Mr. Fease shall, today, remove the flash boards that he placed on the dam structure to allow the level of the water on the pond side to recede to the level of the top of the concrete dam as originally ordered. There will be no requirement to manipulate the sluice gate, based on his representation that it is inoperable due to beaver damage and has been in this state since last summer (i.e., the sluice gate does not let water through it now). In all other respects, the previous order of the court remains in full force and effect.
Going forward from today there shall be strict compliance with the preliminary injunction. In the event there is not such compliance, all options shall remain open to coerce compliance at further hearing on contempt which may be requested and ordered on short notice.
This matter shall be placed on for status hearing on Thursday, June 28, 2012 at 2:00 p.m. in courtroom 19. The parties, and their attorneys, need not appear at this status hearing if counsel for the Vandenakkers reports to the session clerk as of that morning, that there is full compliance. In the event, the complaint for contempt will be dismissed without prejudice and without costs. Thereafter the parties need appear only as required in the normal course of this litigation pursuant to the tracking orders.
(Emphasis original.)
Defendants allege in the civil contempt complaint that plaintiff has violated and continues to violate both orders and that defendants have and continue to suffer damage as a result.
An evidentiaiy hearing upon these issues was held on July 19, 2012. Gregory Vandenakker testified for the defendants and Stephen Garbone was called and testified as a witness for the plaintiff. The counsel for the parties each filed written submissions and numerous photographs which the court has considered. On July 26, 2012 the court, with both counsel present, conducted a view of the premises (Burdon Dam) in issue.
Upon the evidence that I find to be credible, I find and rule as follows.
DISCUSSION
“When presented with a complaint for contempt, the court must first consider whether the order at issue provided the alleged contemnor with a ‘clear and unequivocal command’ to refrain from the allegedly contumacious conduct.” O’Connell v. Greenwood, 59 Mass.Appt.Ct. 147, 149-50 (2003). “Only a clear and unequivocal order provides ‘all who are subject to [the] order’s command [with] fair notice of a conduct the order prohibits.’ ” Id., at 150. “The requisite unequivocal clarity requires more than a general statement that might or might not include the accused’s conduct.” Id., citing Warren Gardens Housing Cooperative v. Clark, 420 Mass. 699, 701 (1995) (finding that the general order to “adequately supervise” children provided insufficient notice that particular omissions constituted inadequate supervision).
This court finds, that the orders of the court dated April 17, 2012 and June 8, 2012 contain the requisite clarity and constitute “clear and unequivocal command[s].” O’Connell, 59 Mass.App.Court at 149-50. The orders require physical acts to, in effect, remove the placement of the physical barriers (flash boards) that had recently been installed or placed upon the dam. These commands have sufficient clarily to provide the plaintiff with “fair notice of the conduct the order prohibits.” Id., at 150.
Once the complainant establishes that the contemnor had “fair notice” of the court’s directive, the complainant then must establish that the order was undoubtedly disobeyed. Id., citing Warren Gardens Housing Cooperative at 420 Mass. at 700. See Sax v. Sax, 53 Mass.App.Ct. 765, 772 (2002). Intent is not an element of civil contempt. O’Connell, 59 Mass.App.Ct. at 150 n.3., citing United Factory Outlet, Inc. v. Jay’s Stores, Inc., 361 Mass. 35, 45 (1972).
The evidence upon the issue of whether the orders had been disobeyed consisted of numerous photographs of the dam at various lines since the court’s orders and the testimony of the two witnesses. The plaintiff, Greg Vandenakker, testified of his personal *235 knowledge that after the removal of the flash boards on April 20 and 21, 2012 a ten-inch flash board was installed on May 27, 2012 and an additional four inches of flash board was installed on June 3, 2012. Vandenakker testified that these actions were taken following his preparation of six acres for the planting of corn near the pond’s edge. The effect of the flash boards raised the pond’s level so that his corn field was flooded. This fact was elaborated by the submission of photos showing the flooded condition of the field. Even after the interim order of June 8 that “Mr. Fease shall, today, remove the flash boards that he placed on the dam structure . . .” Vandenakker testified that the flash boards were not removed until June 11th. Vandenakker also testified that despite the April 17th order’s mandate that the sluice shall be closed once the pond’s level equals that of the concrete spillway, the sluice was never closed through May 28, 2012.
Witness Stephen Garbone testified for the plaintiff. Although the plaintiff, Howard Fease is a trustee of the Burdon Realty Trust, the owner of and party responsible for the operation of the dam, the court finds that Garbone was the individual who physically made the changes in the dam’s height and that he acted as Fease’s advisor in this regard. Garbone did not contradict the testimony of Vandenakker. Garbone admitted, in a somewhat braggadocian manner, that he installed the flash boards with full knowledge of the court’s orders. He testified that as the self-appointed authority on the correct manner of the operation of the dam, he attempted to comply with what he determined was the “intent of the orders” even if this departed from the orders’ express commands.
I find by a preponderance of the evidence that plaintiff has undoubtedly disobeyed the clear and unequivocal commands of both the April 17th order by reinstalling the flash boards and the June 8th order by not removing the flash boards until June 11th. Although defendants argue that the plaintiff has disobeyed the orders by continually allowing the sluice to remain open, even partially, Judge Ricciardone’s June 8th interim order clearly stated that the plaintiff was under “no requirement to manipulate the sluice gate.” Additionally, defendants complain that the considerable tree limbs and debris that has now accumulated at the top of the spillway acts as a “flash board.” Defendants have failed to establish, however, that plaintiff is responsible for this occurrence. Whether and how the debris should be removed is a matter that DEP, the Conservation Commission and/or the Office of Dam Safety should initially determine.
Having found that plaintiff has violated and is in contempt of the court’s orders, I find that, with the possible exception of the accumulated debris, the plaintiff is currently in compliance with the orders. The customary civil contempt remedies of fines or even confinement to coerce compliance are, therefore, not appropriate.
ORDER
1. Having found plaintiff in contempt of the April 17 and June 8, 2012 orders on prior occasions, the plaintiff is hereby ORDERED to comply in full with these orders;
2. The defendants are entitled to reimbursement by plaintiff for the costs and attorneys fees incurred in bringing this contempt action. Defendants’ counsel shall prepare and submit, with appropriate affidavits and supporting documentation, a motion for costs and attorneys fees within fourteen (14) days. If necessary the court will hold a hearing on this issue;
3. The orders of April 17 and June 8, 2012 shall remain in full force and effect until further order of this court.