SUPERIOR COURT 
 
 CUMBERLAND FARMS, INC. V. BOARD OF HEALTH OF THE TOWN OF BARNSTABLE & others[1]

 
 Docket:
 1984CV2017-C
 
 
 Dates:
 August 29, 2019
 
 
 Present:
 /s/Robert B. Gordon Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
 
 

             Presented for decision is Cumberland Farms, Inc.'s ("Plaintiff') Motion for Preliminary Injunction. By this motion, the Plaintiff, a convenience store operator, seeks to have the Court enjoin the Boards of Health of the Towns of Barnstable, Billerica, Sharon, and Walpole and the Cities of Framingham and Somerville (collectively, the "Defendants") from enforcing recently enacted local regulations that prohibit the Plaintiff from selling flavored conventional tobacco, (including menthol cigarettes), flavored smokeless tobacco, and flavored Electronic Nicotine Delivery Systems ("ENDS") (collectively, "flavored tobacco products"), but allow smoke shops and smoking bars to continue to sell these same products. Given that the Defendants have demonstrated a rational basis for their regulations, viz., to reduce underage exposure to and use of flavored tobacco products, the Plaintiff has failed to establish a likelihood of success on the merits of its constitutional challenge to the regulations. Accordingly, the Plaintiffs Motion for Preliminary Injunction must be DENIED.
---------------------------
[1] Board of Health of the Town of Billerica, Board of Health of the City of Framingham, Board of Health of the Town of Sharon, Board of Health of the City of Somerville, and Board of Health of the Town of Walpole.
                                                            -1-
BACKGROUND
            The following background is drawn from the Complaint and the materials submitted by the parties in connection with the pending motion. Further recitation of the facts relevant to this motion is reserved for the discussion below.
            The Defendants are the elected boards of health in six cities and towns in Massachusetts. In accordance with their authority to make reasonable health regulations pursuant to G.L. c. 111, § 31, the Defendants independently enacted regulations that limit the sale of flavored tobacco products to adult-only smoke shops and/or adult-only smoking bars.[2]
            The Plaintiff owns and operates a chain of retail convenience stores in each of the Defendants' cities and towns. All of those stores are duly licensed to sell conventional tobacco products in Massachusetts, and have obtained permits from the Defendants to sell those products within their respective municipalities. In addition to tobacco products, the Plaintiff's stores also sell a variety of everyday consumer items and operate as gas stations. Under the Defendants' new regulations, however, the Plaintiff is prohibited from selling flavored tobacco products in those cities and towns.
            The Plaintiff's Complaint seeks a declaration that the Defendants' regulations are beyond the scope of their constitutional authority to adopt reasonable health regulations (Count I), and that they violate both the Equal Protection Clause (Count II) and the Plaintiff's Due Process rights (Count III)[3] under the Massachusetts Declaration of Rights. The matter is now before the Court on the Plaintiff's Motion for Preliminary Injunction, wherein it requests that the Court
---------------------------
[2] While there were some textual variations between the Defendants' respective regulations, the distinctions are without a difference for purposes of the present analysis.
[3] This latter claim is asserted only against the City of Somerville.
                                                            -2-
enjoin the Defendants from enforcing those regulations that prohibit the Plaintiff from selling flavored tobacco products in its retail convenience stores. The Plaintiff seeks this injunction solely in connection with Counts I and II of its Complaint.
                                                            -3-
DISCUSSION 
            "A preliminary injunction ordinarily is issued to preserve the status quo pending the outcome of litigation." Doe v. Superintendent of Schs. of Weston, 461 Mass. 159, 164 (2011). In order to prevail on a motion for preliminary injunction, the plaintiff must show (1) a likelihood of success on the merits of the claim, (2) that he/she will suffer irreparable harm without the requested injunctive relief, and that (3) the harm, without the injunction, outweighs any harm to the defendant that would result from it being enjoined. Packaging Indus. Grp., Inc.  v. Cheney, 380 Mass. 609,617 (1980). Where a party seeks to enjoin governmental action, as is the case here, it must also show that injunctive relief will either promote or not adversely affect the public interest. See Tri-Nel Mgmt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001). "A preliminary injunction is an extraordinary remedy never awarded as of right[,]" Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008), and "should not be granted unless the plaintiffs [make] a clear showing of entitlement thereto." Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004). Applying this standard and for the reasons set forth below, the Court concludes that the Plaintiff is not likely to succeed on Counts I and II of the Complaint, and its request for preliminary injunctive relief must therefore be denied. See Tri-Nel Mgmt., Inc., 433 Mass. at 227 (recognizing that failure to establish likelihood of success is alone sufficient to warrant denial of preliminary injunctive relief).[4]
            A. Count I: Declaratory Relief
---------------------------
[4]In denying the Plaintiffs motion to bar the Defendants from enforcing their flavored tobacco product regulations, the undersigned joins several other justices of this Court who have denied retailers' motions seeking to enjoin local boards of health in Massachusetts from enforcing similar regulations. See Junaid & Areeb Corp. d/b/a Mimi's Mart v. Morris, 1982CV00945 (Mass. Super. Ct. August 2, 2019) (Squires-Lee, J.); Ohmharsh Corp. v. Town of Barnstable Board of Health, 1972CV00329 (Mass. Super. Ct. July 16, 2019) (Rufo, J.); MOIZ dba Essez Shell v. Hartmann, 1977CV00911 (Mass. Super. Ct. July 3, 2019) (Barrett, J.); Himgiri Enters., Inc. v. Green, 1981CV00366 (Mass. Super. Ct. June 18, 2019) (Hogan, J.).
                                                            -4-
            General Laws c. 111, § 31 authorizes local boards of health to "make reasonable health regulations." In deciding whether a health regulation is reasonable, a reviewing court must grant the regulation the same deference accorded to a statute. Tri-Nel Mgmt., Inc., 433 Mass. at 220. "Health regulations have a strong presumption of validity, and, when assessing a regulation's 'reasonableness,' all rational presumptions are made in favor of the validity of the regulation." Id. "A plaintiff challenging a health regulation must prove that the regulation 'cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it." American Lithuanian Naturalization Club, Athol, Massachusetts, Inc. v. Board of Health of Athol, 446 Mass. 310, 317 (2006) (quoting Druzik v. Board of Health of Haverhill, 324 Mass. 129, 138 (1949)). Stated another way, those who seek to challenge board of health regulations must show that "there is no rational relation between the regulation and its stated public health purpose." Tri-Nel Mgmt., Inc., 433 Mass. at 220. The Plaintiff in the case at bar is unable to satisfy this burden.
            The purpose underlying the health regulations at issue here is to reduce underage use of flavored tobacco products by restricting the sale of such products to smoke shops and smoking bars that limit access to their venues to persons who meet the minimum legal age for the purchase of these products. See G.L. c. 270, § 6. The Defendants contend that, by limiting youths' access and exposure to flavored tobacco products, underage usage of such products will decrease. In support of their position, the Defendants have put forward scientific evidence showing that the regulations will likely lead to this very result. The Court finds such evidence to be compelling.
            The inclusion of flavored ENDS in the municipal bans is rational, because ENDS have been linked as a gateway to subsequent tobacco use. Although ENDS do not contain tobacco or
                                                            -5-
involve either combustion or smoke, ENDS can cause nicotine addiction in youths and thereby create more conventional cigarette and tobacco product users.[5] See Michal S. Dunbar et al., Disentangling Within- and Between-Person Effects of Shared Risk Factors on E-cigarette and Cigarette Use Trajectories From Late Adolescence to Young Adulthood, Nicotine & Tobacco Research (2018); Kathleen R. Case et al., E-Cigarette- Specific Symptoms of Nicotine Dependence among Texas Adolescents, 84 Addictive Behaviors 57, 57-61 (2018). This is particularly alarming because of the recent surge reported in the use of ENDS by youths. See Karen A. Cullen et al., Notes from the Field: Use of Electronic Cigarettes and Any Tobacco  Product Among Middle and High School Students — United States, 2011-2018, 67 Morbidity and Mortality Weekly Report 1276, 1276 (2018). Between 2017 and 2018, for example, ENDS use increased by 78% among high school students and 48% among middle school students. Id. A rational basis for the regulations as applied to ENDS cannot be gainsaid.
            The regulations' focus on flavored tobacco products is likewise rational, because flavoring agents increase the appeal of those products to youths, and are more commonly associated with the progression from occasional use to addictive dependence than unflavored tobacco products. See Harold J. Farber et al., Protecting Children From Tobacco, Nicotine, and Tobacco Smoke, 136 American Academy of Pediatrics 1439, 1458 (2015). Indeed, flavored tobacco product use is highest among those between the ages of 12 and 17 years old. See Andrea C. Villanti et al., Flavored Tobacco Product Use in Youth and Adults: Findings From the First Wave of the PATH Study (2013-2014), 53 American Journal of Preventive Medicine 139, 139 (2017). Reinforcing this conclusion, among middle and high school students who reported
---------------------------
[5] The harmful effects of tobacco are not disputed by the parties. See Aspinall v. Philip Morris Cos., 442 Mass. 381, 388 n.16 (2004) (taking judicial notice of United States Surgeon General's report on the harmful health consequences of smoking).
                                                            -6-
using ENDS between 2016 and 2017, 70.3% reported that they used the product "because they come in flavors [they] like." See U.S. Food & Drug Admin., Modifications to Compliance  Policy for Certain Deemed Tobacco Products: Guidance for Industry, Draft Guidance (2019), available at https://www.fda.gov/media/121384/download.
            Finally, by limiting the sale of flavored tobacco products to adult-only retail locations, the regulations rationally seek to limit youths' exposure to the advertisement of such products. The parties do not dispute that there is a well-established causal relationship between the marketing and promotion of tobacco products in the retail environment and the initiation and progression of tobacco use among young people. See Farber, Protecting Children From Tobacco, Nicotine, and Tobacco Smoke, 136 American Academy of Pediatrics at 1456. Indeed, this causal relationship has been expressly recognized by the United States Surgeon General. See U.S. Dep't of Health & Human Servs., Preventing Tobacco Use Among Youth and Young Adults, A Report of the Surgeon General (2012), available at https://www.ncbi.nlm.nih.gov/books/NBK99237/pdf/Bookshelf NBK99237.pdf. Such evidence strongly supports the conclusion that the regulations rest on both a legitimate purpose and a rational basis of fact.
            The Plaintiff's arguments to the contrary are unavailing. With respect to the ban on flavored ENDS, the Plaintiff first insists that it is irrational to afford smoke shops a monopoly, because underage users purchase those products more frequently at smoke shops than convenience stores. This argument, however, ignores the reality that some youths would still continue to purchase ENDS illegally at convenience stores, which is the principal harm the
                                                            -7-
regulations aim to end.[6] The Court notes in this regard that the Defendants are "entitled to act incrementally and [are] not saddled with a choice between comprehensive regulation and no regulation at all." RYO Cigar Ass'n, Inc. v. Boston Pub. Health Comm'n, 79 Mass. App. Ct. 822, 829 (2011).
            The Plaintiff next argues that the regulations do not themselves impose any point-ofentry age verification requirement for smoke shops, and, therefore, youths can enter those stores and be exposed to flavored tobacco product advertising (even if they are barred from making actual product purchases at the point of sale). It is thus argued that the regulations are, by such omission, irrational. However, the uncontradicted record before the Court reflects that municipal compliance regulators within the Defendant cities and towns do require tobacco retailers to conduct venue point-of-entry age verification, and do issue citations to offending retailers.[7]
            Finally, the Plaintiff argues that removing flavored ENDS from convenience stores will harm the public health, because this product represents a safer alternative to combustible tobacco and thus serves as a means for smokers to reduce or quit tobacco use. This argument, however, is of only modest force, where mature smokers who might be open to quitting will still have access to flavored ENDS (albeit on a more limited basis). It does not demonstrate the regulations to be capricious or without rational basis.
            With respect to the bans on flavored smokeless tobacco, the Plaintiff argues that youths' use of this product has significantly declined in Massachusetts over the past decade; and, because there is a shrinking demand among this target consumer segment, the Defendants cannot provide
---------------------------
[6] That the Plaintiff boasts a zero failure rate in municipal compliance checks on tobacco retailers' sale of ENDS to underage customers does not change this conclusion. The regulations, after all, apply to all retailers that are not smoke shops or smoking bars, and not merely to Cumberland Farms.
[7] The affidavit of James A. Harris does not represent substantial evidence to the contrary, limited as it is to just two isolated failures by retailers to conduct point-of-entry screening.
                                                            -8-
a rational basis upon which to justify their restriction on the sale of flavored smokeless tobacco. The Court does not agree. The fact that there remains demand among youth for flavored smokeless tobacco, even though less than in the past, still suggests that the regulations are rationally related to decreasing the use of that product by youths.
            Lastly, the Plaintiff argues that regulating menthol cigarettes is a power reserved to the FDA and is thus not properly within the purview of local boards of health. The courts, however, have "repeatedly observed" that G.L. c. 111, § 31 "grant[s] boards of health plenary power to issue reasonable, general health regulations." Tri-Nel Mgmt., Inc., 433 Mass. at 222. To that end, the courts have acknowledged the "ill effects" of tobacco use, especially when it involves youths, as a legitimate municipal health concern that warrants municipal regulation of tobacco products. Id. (citing Take Five Vending, Ltd. v. Provincetown, 415 Mass. 741, 748-49 (1993) (affirming bylaw forbidding sale of cigarettes from vending machines)). Accordingly, restricting the sale of menthol cigarettes does not appear to fall outside the scope of the Defendants' regulatory authority.
            For all of these reasons, the Plaintiff has not satisfied its burden of demonstrating a likelihood of success on the merits of its claim that the Defendants' regulations exceeded their statutory authority under G.L. c. 111, § 31. The Plaintiff's Motion for Preliminary Injunction, as asserted under Count I of the Complaint, therefore, must be denied.
B. Count II: Equal Protection 
            Here, where the parties agree that the regulations do not concern fundamental rights or suspect classes, the Plaintiff's equal protection claim is reviewed under a rational basis test. See Take Five Vending, Ltd., 415 Mass. at 748 (“[I]f a statute or ordinance serves a legitimate purpose, and if the means the State adopted are rationally related to the achievement of that
                                                            -9-
purpose, the legislation will withstand constitutional challenge."). The Plaintiff, as the party asserting a constitutional challenge, bears the burden of demonstrating the regulations' invalidity. Id. For the reasons discussed above, the Plaintiff has failed to show that the regulations do not rationally serve a legitimate State interest.
            Plaintiffs Equal Protection challenge additionally founders on the ground that the evidence fails to demonstrate that Cumberland Farms' convenience stores are in fact "similarly situated" to smoke shops or smoking bars. See DuPont v. Commissioner of Con., 448 Mass. 389, 399-400 (2007) (internal quotations and citations omitted) ("An equal protection claim can only succeed if a plaintiff establishes that government action discriminates against similarly situated persons ...."). Smoke shops and smoking bars limit venue entry to those who are 21 years of age, which is the age at which individuals can legally purchase flavored tobacco products. Convenience stores, on the other hand, are open to customers of all ages. Likewise, convenience stores attract a much broader customer cohort than smoke shops and smoking bars; because, unlike these tobacco establishments, they additionally sell a variety of everyday items such as groceries, coffee and candy. Smoke shops and smoking bars, by contrast, are specialized retailers that hold municipal permits to sell only tobacco-related products. Accordingly, unlike smoke shops and smoking bars, youths have a variety of legitimate reasons for entering a convenience store like the Plaintiffs, where (absent the regulations) many more of them would be exposed to flavored tobacco product advertising. In this same vein, those who enter smoke shops and smoking bars have a preexisting interest in tobacco products, because that is the only product sold there. Convenience stores, on the other hand, absent the regulations, could serve as a recruitment venue for youths not already interested in buying flavored tobacco products — that is, youths on site to purchase age-appropriate goods but who are exposed in the process to
                                                            -10-
flavored tobacco product advertising. In these circumstances, it is by no means a disparate treatment of the similarly situated to subject youth-serving convenience stores to regulations not applied to adult-serving tobacco venues. See id. at 400 ("[d]issimilar treatment of dissimilarly situated persons does not violate equal protection").
            Given that the Plaintiff has not demonstrated a likelihood of success on the merits of its claims, the Court need not reach the other grounds asserted by the Defendants for denying a preliminary injunction. See Tri-Nel Mgmt., Inc., 433 Mass. at 227 (recognizing that failure to establish likelihood of success is sufficient to deny injunctive relief).
CONCLUSION AND ORDER
            For the foregoing reasons, the Plaintiffs Motion for a Preliminary Injunction shall be, and hereby is, DENIED.
SO ORDERED.
@/s/Robert B. Gordon Justice of the Superior Court
@August 29, 2019
                                                            -11-
xxz